*AO 241
(Rev. 12/04)

Page 2

## PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| United States District Court | District: OF Delaware |
|---|---|

| Name (under which you were convicted): Julian Bodnari | Docket or Case No.: |
|---|---|

| Place of Confinement: Delaware Correctional Center | Prisoner No.: 00420964 |
|---|---|

| Petitioner (include the name under which you were convicted) Julian Bodnari | Respondent (authorized person having custody of petitioner) v. Thomas Carroll, Warden Carl Danberg, Attorney General |
|---|---|

| The Attorney General of the State of | |
|---|---|

FILED
APR 20 2006
DISTRICT OF DELAWARE

### PETITION

1.  (a) Name and location of court that entered the judgment of conviction you are challenging: Superior Court
    Sussex County     1 The Circle   Suite #2     no scanned
    Georgetown, DE. 19947

    (b) Criminal docket or case number (if you know): Cr. ID NO 9909027880

2.  (a) Date of the judgment of conviction (if you know): July 14, 2000

    (b) Date of sentencing: Janury 23, 2003

3.  Length of sentence: Thirty three (33) yrs.

4.  In this case, were you convicted on more than one count or of more than one crime?   ☑ Yes    ☐ No

5.  Identify all crimes of which you were convicted and sentenced in this case:

    1.) Trf Coc. > 100 GR.      12.) Consp. 2nd          17.) Operating Veh. Tinted
    2.) P.F.D.C.F.              13.) Crim. inpersonation  18.) Speeding
    3.) P.W.I.T.D              14.) Ins. Del Laws
    4.) C.C.D.U.               15.) No valid license
    5-11) Forgery 2nd          16.) Poss. Fictitious license

6.  (a) What was your plea? (Check one)

    ☑ (1)   Not guilty        ☐ (3)   Nolo contendere (no contest)

    ☐ (2)   Guilty            ☐ (4)   Insanity plea

(b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge. what did

you plead guilty to and what did you plead not guilty to? *N/A*

(c) If you went to trial, what kind of trial did you have? (Check one)

☑ Jury    ☐ Judge only

7.    Did you testify at a pretrial hearing, trial, or a post-trial hearing?

☐ Yes    ☑ No

8.    Did you appeal from the judgment of conviction?

☑ Yes    ☐ No

9.    If you did appeal, answer the following:

(a) Name of court: *Delaware Supreme Court*

(b) Docket or case number (if you know): *No 97, 2003*

(c) Result: *AFFirmed Conviction and Sentence*

(d) Date of result (if you know): *12/23/2003*

(e) Citation to the case (if you know): *839 and 465*

(f) Grounds raised: *Inconsistent verdicts, Prosecutorial mis conduct, Speedy Sentence*

(g) Did you seek further review by a higher state court?    ☐ Yes    ☑ No

If yes, answer the following:

(1) Name of court:

(2) Docket or case number (if you know):

(3) Result:

(4) Date of result (if you know):

(5) Citation to the case (if you know):

(6) Grounds raised:

(h) Did you file a petition for certiorari in the United States Supreme Court?      ☐  Yes      ☒  No

If yes, answer the following:

(1) Docket or case number (if you know):

(2) Result:

(3) Date of result (if you know):  *N/A*

(4) Citation to the case (if you know):  *N/A*

10.    Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions

concerning this judgment of conviction in any state court?      ☒ Yes      ☐  No

11.    If your answer to Question 10 was "Yes," give the following information:

(a)      (1) Name of court:  *Superior Court, Sussex County*

(2) Docket or case number (if you know):  *2002 UL 32071648*

(3) Date of filing (if you know):  *7/26/2000*

(4) Nature of the proceeding:  *Motion For a new trial and motion ofacquittal*

(5) Grounds raised:  *In Consistant Verdicts, Prosectorial misconduct, Discovery violation, limitation on cross-examinationoF Garcia, displicity regarding plea, verdict against weight of theevidence*

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐  Yes      ☒  No

(7) Result:  *N/A*

(8) Date of result (if you know):  *N/A*

(b) If you filed any second petition, application, or motion, give the same information: N/A

    (1) Name of court:

    (2) Docket or case number (if you know):

    (3) Date of filing (if you know):

    (4) Nature of the proceeding:

    (5) Grounds raised:

    (6) Did you receive a hearing where evidence was given on your petition, application, or motion? N/A

    ☐  Yes    ☐  No

    (7) Result:

    (8) Date of result (if you know):

(c) If you filed any third petition, application, or motion, give the same information:

    (1) Name of court:

    (2) Docket or case number (if you know):

    (3) Date of filing (if you know):

    (4) Nature of the proceeding:

    (5) Grounds raised:

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

❒ Yes   ❒ No   N/A

(7) Result:

(8) Date of result (if you know):

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?

(1) First petition:   ☑ Yes   ❒ No

(2) Second petition:  ❒ Yes   ❒ No

(3) Third petition:   ❒ Yes   ❒ No

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:

12.   For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

GROUND ONE: Discovery Violation under BRADY V. MARYLAND by Failing to disclose impeaching and exculpatory evidence in violation of Defendants 6th and 14th amendment, right to Counsel and due Process of law.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

See defendants memorandum in support of his §2254 Petition For a writ of Habeas Corpus enclosed herein

(b) If you did not exhaust your state remedies on Ground One, explain why: N/A

AO 241
(Rev. 12/04)

(c)    **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?       ☐ Yes   ☒ No

(2) If you did not raise this issue in your direct appeal, explain why: Ineffective assistance of Counsel

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☒ Yes   ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: Rule 61

Name and location of the court where the motion or petition was filed: Sussex County Superior Court
1 The Circle   Suite #2
Georgetown, DE. 19947
Docket or case number (if you know): ID# 9909027880

Date of the court's decision: 2/28/2005

Result (attach a copy of the court's opinion or order, if available): see attached

(3) Did you receive a hearing on your motion or petition?       ☐ Yes   ☒ No

(4) Did you appeal from the denial of your motion or petition?       ☒ Yes   ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?   ☒ Yes   ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: Delaware Supreme Court
P.O. Box 476
Dover, DE. 19903
Docket or case number (if you know): No. 160 2005

Date of the court's decision: 2/3/2006

Result (attach a copy of the court's opinion or order, if available): see attached

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: N/A

AO 241
(Rev. 12/04)

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One: N/A

GROUND TWO: Ineffective assistance of counsel in violation of defendants sixth (6th) amendment under the United States Constitution.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): See memorandum in support of defendants § 2254 petition For a writ of habeas Corpus.

(b) If you did not exhaust your state remedies on Ground Two, explain why: N/A

(c)     **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?     ☐ Yes    ☑ No

(2) If you did not raise this issue in your direct appeal, explain why: Ineffective assistance of Counsel

(d)     **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☑ Yes    ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: Rule 61

Name and location of the court where the motion or petition was filed: Sussex County Superior Court
1 The Circle Suite #2
Georgetown, DE. 19947

Docket or case number (if you know): ID# 9909027880

Date of the court's decision: 2/28/2005

PsAO 241
(Rev 12 04)

Result (attach a copy of the court's opinion or order, if available): *See attached*

(3) Did you receive a hearing on your motion or petition?  ☐ Yes  ☑ No

(4) Did you appeal from the denial of your motion or petition?  ☑ Yes  ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?  ☑ Yes  ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: *Delaware Supreme Court*
*P.O. Box 476*
*Dover, DE. 19903*

Docket or case number (if you know): *No. 160 2005*

Date of the court's decision: *2/3/2006*

Result (attach a copy of the court's opinion or order, if available): *See attached*

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: *N/A*

(e)    **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you :
have used to exhaust your state remedies on Ground Two *N/A*

GROUND THREE: *Ineffective assistance of Counsel and violation of due*
*process of law under the sixth and Fourteenth amendment of the United*
*States Constitution.*

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): *See memorandum*
*in support of defendants §2254 Petition For a writ of Habeas Corpus*
*enclosed here in.*

℗ AO 241
(Rev. 12/04)

(b) If you did not exhaust your state remedies on Ground Three, explain why? *N/A*

(c)  **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?    ☐ Yes   ☑ No

(2) If you did not raise this issue in your direct appeal, explain why: *Ineffective assistance of Counsel*

(d)  **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☑ Yes   ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: *Rule 61*

Name and location of the court where the motion or petition was filed: *Sussex County Superior Court*
*1 The Circle  Suite #2*
*Georgetown, DE. 19947*

Docket or case number (if you know): *ID# 990902 7880*

Date of the court's decision: *2/28/2005*

Result (attach a copy of the court's opinion or order, if available): *See attached*

(3) Did you receive a hearing on your motion or petition?    ☐ Yes   ☑ No

(4) Did you appeal from the denial of your motion or petition?    ☑ Yes   ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?    ☑ Yes   ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: *Delaware Supreme Court*
*P.O. Box 476*
*Dover, DE. 19903*

Docket or case number (if you know): *No. 160 2005*

Date of the court's decision: *2/3/2006*

Result (attach a copy of the court's opinion or order, if available): *See attached.*

PsAO 241
(Rev 12 04)

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: *N/A*

(e)    **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground Three: *N/A*

GROUND FOUR: *Violation of defendants right to due process under the Fourteenth amendment to the United States Constitution.*

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): *See memorandum in support of defendants § 2254 Petition For writ of Habeas Corpus enclosed herein*

(b) If you did not exhaust your state remedies on Ground Four, explain why: *N/A*

(c)    **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?        ☐ Yes    ☒ No

(2) If you did not raise this issue in your direct appeal, explain why: *Raised For First time on post Conviction review, see below item (d)*

(d)    **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☒ Yes    ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: *Rule 61*

℅AO 241
(Rev. 12 04)

Name and location of the court where the motion or petition was filed: *Sussex County Superior Court*
*1 The Circle   Suite #2*

Docket or case number (if you know): *ID# 9909027880   Georgetown, DE. 19997*

Date of the court's decision: *2/28) 2005*

Result (attach a copy of the court's opinion or order, if available): *see attached*

(3) Did you receive a hearing on your motion or petition?          ☐ Yes   ☑ No

(4) Did you appeal from the denial of your motion or petition?     ☑ Yes   ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?   ☑ Yes   ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: *Delaware Supreme Court*
*P.O. Box 476*
*Dover, DE. 19903*

Docket or case number (if you know): *NO 160. 2005*

Date of the court's decision: *2/3/2006*

Result (attach a copy of the court's opinion or order, if available): *see attached*

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: *N/A*

(e)   **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you
have used to exhaust your state remedies on Ground Four: *N/A*

13.   Please answer these additional questions about the petition you are filing:

(a)   Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction?   ☑ Yes    ☐ No

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them:   *N/A*

(b)   Is there any ground in this petition that has not been presented in some state or federal court? If so, ground or grounds have not been presented, and state your reasons for not presenting them:   *N/A*

14.   Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition?   ☐ Yes    ☑ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed.  Attach a copy of any court opinion or order, if available.   *N/A*

15.   Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for the judgment you are challenging?   ☐ Yes    ☑ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the raised.   *N/A*

AO 241
(Rev 12/04)

16.  Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing: Ronald Phillips

(b) At arraignment and plea: Ronald Phillips

(c) At trial: Andrew J. Witherell

(d) At sentencing: Andrew J. Witherell

(e) On appeal: Charles M. Oberly III

(f) In any post-conviction proceeding: None

(g) On appeal from any ruling against you in a post-conviction proceeding: None

17.  Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging? ☐ Yes ☑ No

(a) If so, give name and location of court that imposed the other sentence you will serve in the future: N/A

(b) Give the date the other sentence was imposed: N/A

(c) Give the length of the other sentence: N/A

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future? ☐ Yes ☐ No N/A

18.  TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.* N/A

AO 241
(Rev 12/04)

---

\* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in part that:

    (1)    A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -

        (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

        (B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

        (C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

        (D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

AO 241
(Rev. 12/04)

(2)     The time during which a properly filed application for State post-conviction or other collateral review
with respect to the pertinent judgment or claim is pending shall not be counted toward any period of
limitation under this subsection.

Therefore, petitioner asks that the Court grant the following relief:

or any other relief to which petitioner may be entitled.

_____

Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for

Writ of Habeas Corpus was placed in the prison mailing system on _____04/12/06_____ (month, date, year).

Executed (signed) on _____04/12/06_____ (date).

_____

Signature of Petitioner

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition.

IN FORMA PAUPERIS DECLARATION

_____

[insert appropriate court]

* * * * *

IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| JULIAN BODNARI, | § |
| | § No. 160, 2005 |
|     Defendant Below- | § |
|     Appellant, | § |
| | § Court Below—Superior Court |
|     v. | § of the State of Delaware |
| | § in and for Sussex County |
| STATE OF DELAWARE, | § Cr. ID No. 9909027880 |
| | § |
|     Plaintiff Below- | § |
|     Appellee. | § |

Submitted: November 4, 2005
Decided: January 18, 2006

Before **STEELE**, Chief Justice, **BERGER** and **JACOBS**, Justices

## O R D E R

This *18th* day of January 2006, upon consideration of the briefs of the
parties and the record below, it appears to the Court that the judgment of the
Superior Court should be affirmed on the basis of and for the reasons set
forth in its decision dated February 28, 2005. In addition, we find no merit
to the appellant's claim that he was prejudiced by not receiving the State's
answer to his postconviction motion and the affidavit of his trial counsel
prior to the issuance of the Superior Court's decision. Even assuming that
the appellant did not receive copies of those documents prior to the issuance
of the Superior Court's decision, our review of the record in this case does
not indicate that that error resulted in any prejudice to the appellant.

IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| JULIAN BODNARI, | § |
| | § No. 160, 2005 |
| Defendant Below- | § |
| Appellant, | § |
| | § Court Below—Superior Court |
| v. | § of the State of Delaware |
| | § in and for Sussex County |
| STATE OF DELAWARE, | § Cr. ID No. 9909027880 |
| | § |
| Plaintiff Below- | § |
| Appellee. | § |

Submitted: January 31, 2006
Decided: February 3, 2006

Before **STEELE**, Chief Justice, **HOLLAND**, **BERGER**, **JACOBS** and **RIDGELY**, Justices, constituting the Court *en banc*.

O R D E R

This 3rd day of February, 2006, the Court having carefully considered Appellant's Motion for Reargument and/or Rehearing *en banc* of this Court's Order dated January 18, 2006, and it appearing that the same should be denied;

NOW, THEREFORE, IT IS ORDERED that Appellant's Motion be, and the same hereby is, DENIED.

BY THE COURT:

_____
Justice

SUPERIOR COURT
OF THE
STATE OF DELAWARE

E. SCOTT BRADLEY
JUDGE

SUSSEX COUNTY COURTHOUSE
1 THE CIRCLE, SUITE 2
GEORGETOWN, DELAWARE 19947
TELEPHONE (302) 856-5256

February 28, 2005

Julian Bodnari
S.B.I. #420964
Delaware Correction Center
1181 Paddock Road
Smyrna, DE 19977

Adam D. Gelof, Esquire
Department of Justice
114 East Market Street
Georgetown, DE 19947

Andrew J. Witherell, Esquire
100 E. 14th Street
Wilmington, DE 19801

> RE:    State of Delaware v. Julian Bodnari
>           Def. ID# 9909027880
>           **Memorandum Opinion - Motion for Postconviction Relief**

Gentlemen:

This is my decision on Julian Bodnari's ("Bodnari") Motion for Postconviction Relief.

Bodnari and his co-defendant, Herman Garcia ("Garcia"), were traveling southbound on U.S.

Route 113 when they were stopped for speeding by a Delaware State Police ("DSP") officer.

The routine traffic stop turned into a drug bust when the officer discovered nearly 2.2 pounds of

cocaine and a semi-automatic 9 mm pistol hidden in the vehicle's center console.  Bodnari and

Garcia were then arrested and charged by the State of Delaware (the "State") with numerous drug

and weapon offenses. Garcia pled guilty to several offenses and, as part of his plea agreement, agreed to testify against Bodnari.

The State was represented at Bodnari's trial by Deputy Attorney General Adam D. Gelof ("Gelof"). Bodnari was represented by Andrew J. Witherell ("Witherell"). Garcia did testify against Bodnari. The jury found Bodnari guilty of most of the more serious offenses. Bodnari filed Motions for a New Trial and Judgment of Acquittal, which I denied. The Supreme Court affirmed Bodnari's convictions.

This is Bodnari's first Motion for Postconviction Relief. It was filed on June 30, 2004. Therefore, it was filed on time. Bodnari seeks relief based upon three grounds. Ground one is an allegation of ineffective assistance of counsel. It is based upon Witherell's alleged failure to listen to the tape of DSP Officer Andrew J. Goode's ("Goode") interview of Garcia on September 20, 1999 and to impeach Garcia's credibility using the information on the tape. Ground two is an alleged violation by the State of Bodnari's rights under the discovery rules, *Brady, Jencks,* and 11 *Del. C.,* § 3507. It is based upon the State's alleged failure to disclose to Bodnari all of Garcia's statements. Ground three is an allegation of ineffective assistance of counsel. It is based upon Witherell's alleged failure to request a mistrial after Garcia admitted at trial that he had lied to the DSP about other people being involved with him and Bodnari in the distribution of drugs. Gelof and Witherell filed affidavits responding to Bodnari's allegations.

## A. **Violation of Various Rights**

Bodnari's second ground for relief could have been raised on appeal and is, therefore, procedurally barred pursuant to Superior Court Criminal Rule 61(I)(3) unless Bodnari is able to show cause for relief from the procedural bar and prejudice as a result of any violation of his

2

rights.[1]  However, "this bar to relief does not apply to a colorable claim that there was a

miscarriage of justice because of a constitutional violation that undermined the fundamental

legality, reliability, integrity or fairness of the proceedings leading to the judgment of

conviction.[2]"  Bodnari alleges that the State interviewed Garcia five times[3] and failed to turn over

all of Garcia's statements to him in violation of his rights.  I addressed this argument in

Bodnari's Motion for a New Trial and concluded that it had no merit because the State had, in

fact, disclosed to Bodnari all of Garcia's statements long before the trial started.  Bodnari has not

raised anything new regarding this allegation in his Motion for Postconviction Relief that has

changed my mind.  Therefore, having concluded previously that it is without merit, I will not

revisit this argument in its entirety now.

However, I will address one part of Bodnari's argument now because Bodnari did not

clearly raise it in his Motion for a New Trial and I did not clearly address it when I denied that

motion.  Bodnari alleges that Goode interviewed Garcia again sometime in April, 2000.  This is

the alleged "fourth interview."  Bodnari also alleges that the State did not disclose to him any of

Garcia's statements made during this interview.  Specifically, Bodnari alleges that Garcia told

Goode that there were "other people" involved in the sale of drugs with him.  Bodnari further

alleges that these "other people" comprised a group of 14 people that were convicted of

distributing more than 10 million dollars worth of marijuana and cocaine in 1999 and 2000.  The

---

[1]*Outten v. State*, 720 A.2d 547, 556 (Del. 1998).

[2]*Outten*, 720 A.2d at 556, *citing* Super. Ct. Crim. R. 61(i)(5).

[3]One, September 19, 1999; Two, September 20, 1999; Three, March 10, 2000; Four, April, 2000; Five, before trial, 2000.

"other people" were led by Eduardo Hernandez, who was, according to Bodnari, Garcia's good friend. A private investigator hired by Bodnari is the source of this information. All of this is important, according to Bodnari, because the fact that "other people" were involved with Garcia in the distribution of drugs could have been exculpatory.

The basis for Bodnari's allegation that Goode interviewed Garcia in April, 2000 is a statement that Garcia made at trial. Garcia admitted that he had lied previously to Goode because he "didn't want to get a couple other people involved in it." Later on in his testimony Garcia stated that he told Goode the truth when he talked to him again. It is clear to me from my review of the record that Garcia, when he said that he had lied to Goode, was referring to his September 20, 1999 and March 10, 2000 interviews with Goode. Garcia did meet again with Goode as part of Gelof's trial preparation. This puts Garcia's statements about lying to Goode and then later telling him the truth about his and Bodnari's role in a drug distribution conspiracy in the proper context and accounts for all of the interviews that Garcia had with the State.

I have no reason to believe that Garcia ever told the State the real names of the other people involved with him and Bodnari in a drug distribution conspiracy. I also have no reason to believe that these "other people" were later convicted in 1999 and 2000 of distributing 10 million dollars of marijuana and cocaine. Gelof stated in his affidavit that he does not have any knowledge of Goode or anyone else for the State conducting any interview of Garcia before Bodnari's trial that focused at all on "other people" being involved with Garcia in a drug distribution conspiracy. Bodnari has not presented me with any convincing information that anyone else associated in any way with Garcia was later convicted of selling large quantities of drugs. I would think that if Bodnari's private investigator really had this information, then he

4

would have some proof of it. Instead, I only have Bodnari's vague allegations, which are nothing more than that. They simply have no basis whatsoever in fact. Therefore, I have no reason to believe that Garcia told the State the real names of the "other people" that were involved with him and Bodnari in distributing drugs. This is just something that Garcia mentioned for the first time at trial. Thus, there was no violation of Bodnari's rights because the State was unaware of this particular information before trial.

As an aside, it is obvious that there were other people involved with Garcia and Bodnari in distributing drugs. Garcia gave statements to the State, which were given to Bodnari before his trial, making it clear that there were other people involved with him and Bodnari in distributing drugs. For example, Garcia told the DSP about how Bodnari got drugs and how he used other people to deliver and protect the drugs and money. However, Garcia only used partial names and nicknames like "Rasher," "Sam," and "Mooch." The only complete name the DSP got was Sam Stumhofer, who Bodnari and Garcia identified as "Sam." Sam owned the motor vehicle that Bodnari and Garcia were riding in when they were stopped. Thus, it is no surprise that there were "other people" involved. There were just no "other people" involved that Garcia ever identified in any useful way for the State.

## B. Ineffective Assistance of Counsel

The United States Supreme Court has established the proper inquiry to be made by courts when deciding a motion for postconviction relief.[4] In order to prevail on a claim for ineffective assistance of counsel pursuant to Superior Court Criminal Rule 61, the defendant must engage in

---

[4] *Strickland v. Washington*, 466 U.S. 668 (1984).

a two-part analysis.[5] First, the defendant must show that counsel's performance was deficient and fell below an objective standard of reasonableness.[6] Second, the defendant must show that the deficient performance prejudiced the defense.[7] Further, a defendant "must make and substantiate concrete allegations of actual prejudice or risk summary dismissal."[8] It is also necessary that the defendant "rebut a 'strong presumption' that trial counsel's representation fell within the 'wide range of reasonable professional assistance,' and this Court must eliminate from its consideration the 'distorting effects of hindsight when viewing that representation.'"[9] There is no procedural bar to claims of ineffective assistance of counsel.[10]

### 1. Failure to Investigate

Bodnari alleges that Witherell did not listen to the tape of Goode's interview of Garcia on September 20, 1999. Witherell acknowledges that he did not listen to the tape. However, Witherell did have and review Goode's police report that summarized Garcia's statements. Charles M. Oberly, III, Esquire, Bodnari's appellate counsel, obtained the tape, had it transcribed, and concluded that it did not differ in any material way from the summarized version in Goode's police report. Thus, it does not matter that Witherell did not listen to the tape because he did

---

[5] *Strickland*, 466 U.S. at 687.

[6] *Id.* at 687.

[7] *Id.* at 687.

[8] *State v. Coleman*, 2003 WL 22092724 (Del. Super. Ct.).

[9] *Coleman*, 2003 WL at *2, *quoting Strickland*, 466 U.S. at 689.

[10] *Coleman*, 2003 WL at *1, *citing State v. Johnson*, Del. Super. Ct., Cr. A. No. 97-10-0164(R1), Graves, J. (August 12, 1999) at 2; *State v. Gattis*, Del. Super. Ct., Cr. A. Nos. IN90-05-1017 to 1019, Barron, J. (December 28, 1995) at 7, *aff'd*, 637 A.2d 1174 (Del. 1997).

review Goode's report, which accurately summarized the information on the tape. Bodnari implicitly agrees with this because all of his complaints about Witherell are based on information that was in Goode's report. Bodnari's real complaint is what Witherell did with the information, not with the fact that he did not listen to the tape.

Bodnari alleges that Garcia was the State's star witness. Given Garcia's importance, Bodnari alleges that Witherell had a duty to investigate Garcia's statements and impeach his credibility. I have concluded that Witherell did do this, just not in the manner that Bodnari would have preferred. Witherell read Goode's report, gave it to Bodnari and discussed it with him. Witherell also used the report when he went to Reading, Pennsylvania, Bodnari's hometown, to investigate various matters that Garcia had discussed with Goode. Bodnari alleges that Goode's police report contains four statements made by Garcia that could have been used to impeach his trial testimony.

One. Garcia told Goode on September 20, 1999 that he and Bodnari were going to see "Rasher" in Chesapeake, Virginia. Goode's report does not mention anyone named "Mooch." Garcia testified at trial that he and Bodnari were going to see "Mooch." Bodnari alleges that these are inconsistent statements and that they could have been used by Witherell to impeach Garcia's credibility.

Two. Garcia told Goode on September 20, 1999, that "Sam" usually drives the vehicle Bodnari was driving at the time of his arrest and that "Sam" is Bodnari's girlfriend's brother. Bodnari had told the trooper at the scene that the vehicle he was driving was owned by his brother-in-law, but that he could not remember his brother-in-law's name. Bodnari later told Goode that the owner of the vehicle was not his brother-in-law, but that he was a friend who was

7

going out with his sister and that this makes him like his brother-in-law. Bodnari alleges that the State was able to impeach his credibility even though he never testified and that he could not respond. Bodnari goes on to claim that he and Garcia are the only persons that are able to explain the relationship issue with respect to "Sam."

Three. The DSP found approximately $1400 on Garcia when they arrested him on September 19, 1999. Garcia told Goode on September 20, 1999 that $1200 came from his family's restaurant and $200 was his spending money. Garcia testified at trial that $1,300 of the money was payment from Bodnari for prior work. Bodnari alleges that the State used this statement to show that Garcia worked for Bodnari and that Bodnari was the "top dog" in a drug distribution conspiracy. Bodnari also alleges that the statements are inconsistent and could have been used to impeach Garcia's credibility.

Four. Garcia told Goode on September 20, 1999 that he had never been to Virginia before. Bodnari says that this is the only place where Garcia states that he had never been to Virginia before. Garcia testified at trial that he had been to Virginia before, but that Bodnari went along with him this time since he did not know exactly where he was going. Bodnari's defense at trial was that he was with Garcia only to show him how to get to Virginia. According to Bodnari, Garcia knew that Bodnari and his family took vacations in Virginia. Bodnari alleges that Witherell should have used this statement during Garcia's examination to both support Bodnari's defense and impeach Garcia's credibility.

I find that Witherell's representation did not fall below an objective standard of reasonableness. The fact that Witherell did not listen to the tape is irrelevant because he reviewed Goode's police report, which accurately summarized Garcia's statements. The issue is

8

whether Witherell did an adequate job of impeaching Garcia's credibility. I have concluded that he did. Garcia's first, third and fourth statements to Goode are inconsistent with his trial testimony. This is hardly a surprise since Garcia readily admitted at trial that he had lied repeatedly to the DSP officers. In any event, it is difficult to see how all of this was going to help Bodnari. It is not surprising that Garcia, who was in possession of 2.2 pounds of cocaine and a 9 mm semi-automatic pistol, might lie when he was first stopped by the DSP officer about where he was going, who he was going to see, and the source of a large amount of cash that was on him. Garcia's second statement to Goode is consistent with his trial testimony and is simply some unpleasant testimony for Bodnari that Witherell could not attack because "Sam" would not even talk to Witherell.

Witherell did an excellent job of impeaching Garcia's credibility. He made Garcia admit before the jury that he had lied repeatedly to the DSP officers that had interviewed him. Witherell also made it clear to the jury that Garcia had entered into a very favorable plea agreement with the State and that he would do whatever was necessary to get out of prison as soon as possible so that he could go home and see his children. Witherell very ably proved the point that Garcia was a liar and had every reason to keep lying. This is exactly what Bodnari wanted done and it is exactly what Witherell did. I can find no fault at all in Witherell's representation of Bodnari merely because he accomplished this objective without attacking a few of Garcia's statements.

### 2. Brady Material

Bodnari alleges that Witherell did not act appropriately when Garcia testified at trial that he had previously lied to the police because he did not want to get "other people" involved.

9

Bodnari alleges that the fact that "other people" may have been involved was unknown to him, that it was *Brady* material, and that it should have been disclosed by the State to Bodnari before trial. Bodnari alleges that Witherell should have either asked for a mistrial or demanded that the State immediately disclose all *Brady* material to him. Instead, according to Bodnari, Witherell did nothing. I have concluded that this argument is without merit because there was nothing for Witherell to do.

Witherell stated in his affidavit that he specifically requested that all *Brady* material be turned over by the State. Witherell further stated that there was no information turned over to the defense regarding "other people." Gelof stated in his affidavit that he gave all *Brady* material to defense counsel. Gelof also stated that he was not aware of Garcia ever stating prior to trial that there were "other people" involved in drug trafficking with him that were subsequently convicted of selling large quantities of drugs. As I stated earlier, Garcia did tell the DSP, by using partial names and nicknames, about people who supplied Bodnari with drugs and how Bodnari used other people to deliver and protect the drugs and money. The State gave Bodnari all of these statements before the trial. However, given the denials in Gelof's affidavit and the vagueness of Bodnari's allegations, I have no reason to believe that Garcia ever gave the State any real names of other who were involved with him and Bodnari in distributing drugs. Bodnari has simply not demonstrated that the State withheld any evidence concerning "other people," or how this evidence may have impacted his case. Given this, there was nothing at all deficient in the manner in which Witherell handled this matter.

## CONCLUSION

Bodnari's Motion for Postconviction Relief is DENIED for the foregoing reasons.

**IT IS SO ORDERED.**

Very truly yours,

E. Scott Bradley

ESB:tll

cc:    Prothonotary's Office

11

Elena DeLong
P.O. Box 41
Alburtis PA 18011



U.S. Di
844 N. K
Wilming

