## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| Julian Bodnari | ) | |
|     Petitioner | ) | |
| | ) | |
| v. | ) | **C.A. No.** |
| | ) | |
| Thomas Carroll, Warden | ) | **Memorandum In Support** |
| Delaware Correctional Center and,) | | **Of 2254 Petition for a Writ** |
| Carl Danberg, Attorney General,  ) | | **of Habeas Corpus** |
| State of Delaware | ) | |

**FILED**

APR 2 0 2006

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

### INTRODUCTION

COMES NOW, the Petitioner, Julian Bodnari, pro se, pursuant to 28 U.S.C 2254, and files this Memorandum in support of his Petition for a Writ of Habeas Corpus, as follows:

### EVIDENTIARY HEARING REQUEST

### I.   PARTIES

1.1.   Julian Bodnari, Petitioner herein is confined at the Delaware Correctional Center, near Smyrna, Delaware. On July 14, 2000, Julian Bodnari was convicted by a Superior Court jury of sixteen charges: Trafficking in cocaine, possession with intent to deliver cocaine, possession of a firearm during the commission of a felony, carrying a concealed deadly weapon, second degree conspiracy, six counts of second degree forgery, criminal impersonation, and various traffic offenses. See Superior Court Criminal Docket Item, "Exhibit A."

1.2.    Respondents' Thomas Carroll is the Warden of the Delaware Correctional Center near Smyrna, Delaware; and Carl Danberg is the Attorney General of the State of Delaware.

## II.    JURISDICTION

2.1    The United States District Court has jurisdiction over this petition for a writ of habeas corpus pursuant to 28 U.S.C. 2254 and 1331.  Petitioner is in custody pursuant to judgment of a Delaware State Court and seeks relief on the ground that his imprisonment and sentence are in violation of his rights under the United States Constitution.

## III.    VENUE

3.1    Venue is proper in the United States District Court for the District of Delaware because Petitioner's conviction was obtained in the Sussex County Superior Court in the State of Delaware.  See 28 U.S.C. 2241(d).

## IV.    PROCEDURAL HISTORY

4.1    Petitioner was acquitted of two additional charges of maintaining a vehicle for keeping controlled substances and possession of drug paraphernalia.

4.2    On July 26, 2000, Petitioner filed Motions for a new trial and for judgment of acquittal, which were denied on June 14, 2002.  See **State v. Bodnari, 2002 WL32071648 (Del. Super. June 14, 2002)**.

4.3     Then in August 2002, Petitioner moved for a new trial based on newly discovered evidence. The Superior Court denied that Motion on December 20, 2002. See **State v. Bodnari, 2002 WL32071664 (Del. Super. Dec. 30, 2002)**.

4.4     On January 23, 2003 Petitioner was sentenced to thirty-three years of mandatory incarceration followed by probation.

4.5     On Appeal, the Delaware Supreme Court affirmed Petitioner's conviction and sentence. See **Bodnari v. State, 2003 WL22880372 (Del. Supr. Dec. 3, 2003)**.

4.6     On June 30, 2004 Petitioner applied pro se for post conviction relief under Superior Court Criminal Rule 61. Superior Court denied the Motion on February 28, 2005. See **State v. Bodnari, 2005 WL589932 (Del. Super. Feb. 28, 2005)**.

4.7     Then on April 27, 2005 Petitioner filed a Notice of Appeal to the Delaware Supreme Court. On January 18, 2006 the Supreme Court affirmed the judgment of the Superior Court. See Appeal No. 160, 2005.

4.8     On January 27, 2006 Petitioner filed a Motion for Re-argument and Rehearing EN BANC. On February 3, 2006 the Delaware Supreme Court issued an ORDER, which denied Petitioner's Motion for Re-argument and/or Rehearing, EN BANC.

4.9     Finally, on February 7, 2006 the Delaware Supreme Court issued it's MANDATE which adjudged that the ORDER's dated January 18, 2006 and February 3, 2006 be affirmed in Appeal No. 160, 2005.

## V.    **GROUNDS FOR RELIEF**

5.1     The Grounds on which Petitioner contends his conviction is contrary to the Constitution of the United States are as follows:

**CLAIM 1:** THE STATE OF DELAWARE VIOLATED PETITIONER'S DISCOVERY RULES AND THE FUNDAMENTAL REQUIREMENTS OF <u>BRADY V. MARYLAND</u> AND <u>NAPUE V. ILLINOIS</u> BY FAILING TO DISCLOSE IMPEACHING AND EXCULPATORY EVIDENCE REGARDING CO-DEFENDANT AND BY ALLOWING PETITIONER'S CO-DEFENDANT TO PRESENT FALSE AND MISLEADING TESTIMONY, THEREBY VIOLATING PETITIONER'S SIXTH AMENDMENT RIGHT TO COUNSEL AND FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS OF LAW UNDER THE UNITED STATES CONSTITUTION.

**CLAIM 2:** PETITIONER RECEIVED DEFICIENT LEGAL REPRESENTATION PRIOR TO TRIAL FOR COUNSEL'S FAILURE TO INVESTIGATE AND OBTAIN BRADY MATERIAL ACCESSIBLE TO PREPARE A DEFENSE IN VIOLATION OF PETITIONER'S SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE UNITED STATES CONSTITUTION.

**CLAIM 3:** PETITIONER RECEIVED DEFICIENT LEGAL REPRESENTATION DUE TO COUNSEL'S FAILURE TO OBJECT TO CO-DEFENDANT'S TESTIMONY IN REGARD TO KNOWN FACTS WHICH WOULD HAVE LEAD INEVITABLY TO THE CONCLUSION THAT CO-DEFENDANT WAS CONCEALING NAMES AND PROTECTING THE IDENTITY OF DRUG DEALERS, WHICH WOULD HAVE EXONERATED PETITIONER COMBINED WITH COUNSEL'S ACCUMULATION OF ERRORS SUCH THAT PETITIONER WAS PREJUDICED RENDERING HIS TRIAL PROCEEDINGS FUNDAMENTALLY UNFAIR THEREBY VIOLATING HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AND FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS OF LAW UNDER THE UNITED STATES CONSTITUTION.

**CLAIM 4:**   **THE SUPERIOR COURT VIOLATED BODNARI'S RIGHT TO DUE PROCESS OF LAW UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION BY DENYING BODNARI HIS RIGHT TO NOTICE AND OPPORTUNITY TO BE HEARD BY FAILING TO PROVIDE HIM WITH COPIES OF ATTORNEY'S RESPONSES FILED BY THE STATE AND DEFENSE COUNSEL AND BY ISSUING SUMMARY JUDGMENT IN FAVOR OF THE STATE WITHOUT AFFORDING BODNARI AN EVIDENTIARY HEARING ON HIS RULE 61 MOTION FOR POST CONVICTION RELIEF.**

**6.1    FACTUAL AND LEGAL SUPPORT**

A.    The undisputed facts show that the State of Delaware violated Petitioners Discovery Rules and the fundamental requirements of **Brady v. Maryland** and **Napue v. Illinois** (citations omitted) by failing to disclose impeaching and exculpatory evidence regarding Petitioner Julian Bodnari's co-defendant Herman Garcia (hereafter – Garcia) and by allowing Garcia to present false and misleading testimony, thereby violating Petitioners Sixth Amendment Right to counsel and his Fourteenth Amendment Right to Due Process of Law.   Specifically, when the State via Detective Goode interviewed Garcia three times, first on September 20, 1999; second on March 10. 2000; third in April, 2000; fourth in June, 2000, and failed to turn over all of Garcia's statements to Petitioner in violation of his Constitutional rights.   When Detective Goode interviewed Garcia in April 0f 2000, the third interview, the State did not disclose to Petitioner any of Garcia's statements made during this interview.   Garcia told Detective Goode that there were "other people" involved in the sale of drugs with him.   These "other people" comprised a group of 14 people that were convicted of distributing more than ten million dollars worth of marijuana and cocaine in 1999 and 2000.   These other people (drug dealers) were led by Eduardo Hernandez, who was Garcia's good friend.   Petitioner hired a private investigator who provided the source of this information.   These facts are important as well as material because the fact

that "other people", i.e., "Drug Dealers", were involved with Garcia in the distribution of drugs, which is exculpatory evidence. Garcia himself testified at trial that Detective Goode interviewed him in April, 2000. Moreover, Garcia admitted that he had lied previously to Detective Goode because he "didn't want to get other people involved in it." Later on in his testimony Garcia stated that he told Detective Goode the truth when he talked to him again. In fact, Garcia did meet again with Detective Goode as part of State's Attorney Adam D. Gelof (hereafter Gelof) trial preparation.

**B.**     Ineffective assistance of counsel. In this case, Petitioner received deficient legal representation prior to trial based upon counsel's failure to investigate and obtain Brady material accessible to prepare a defense in violation of Petitioners Sixth Amendment Right to effective assistance of counsel, and counsel's failure to object to Garcia's testimony in regard to known facts which would have lead inevitably to the conclusion that Garcia was concealing specific and full names and protecting the identity of drug dealers which would have exonerated Petitioner or created a reasonable doubt in the minds of the jurors combined with defense counsel, Andrew J. Witherell's (hereafter – Witherell) accumulation of errors such that Petitioner was prejudiced rendering his trial proceedings fundamentally unfair thereby violating his Sixth Amendment Right to effective assistance of counsel and Fourteenth Amendment right to due process of law under the United States Constitution.

Petitioner asserted that Witherell did not listen to the tape of Detective Goode's interview of Garcia on September 20, 1999. Moreover, Witherell admits that he did not listen to the tape. Garcia was the State's star witness. Given Garcia's importance, Witherell had a fiduciary duty to investigate Garcia's statements and impeach his credibility. Detective Goode's police report contains four statements made by Garcia that could have been used to impeach his trial testimony. **One**: Garcia told Detective Goode on September 20, 1999 that he and Petitioner were going to see "Rasher" in Chesapeake,

Virginia. Goode's report does not mention anyone named "Mooch." Garcia testified at trial that he and Petitioner were going to see "Mooch". These are inconsistent statements and they could have been used by Witherell to impeach Garcia's credibility.    **Two:** Garcia told Detective Goode on September 20, 1999 that "Sam" usually drives the vehicle Petitioner was driving at the time of his arrest and that "Sam" is the brother of Petitioner's girlfriend. Petitioner told the Trooper at the scene that the vehicle he was driving was owned by his brother-in-law or a friend who was going out with his sister, who was like a brother-in-law. At any rate, the State was able to impeach his credibility even though he never testified and that he could not respond. Petitioner and Garcia are the only persons that are able to explain the relationship issue with respect to "Sam". **Three:** The Delaware State Police (hereafter -- DSP) found approximately $1,400.00 on Garcia when they arrested him on September 19, 1999. Garcia told Detective Goode on September 20, 1999 that $1,200.00 came from his family's restaurant and $200.00 was his spending money. Garcia testified at trial that $1,300.00 of the money was payment from Petitioner for prior work. Petitioner asserts that the State used this statement to show that Garcia worked for Petitioner and that Petitioner was the "Top Dog" in a drug distribution conspiracy. These statements are inconsistent and could have been used to impeach Garcia's credibility. **Four:** Garcia told Detective Goode on September 20, 1999 that he had never been to Virginia before. Petitioner asserts that this is the only place where Garcia states that he had never been to Virginia before. Garcia testified at trial that he had been to Virginia before, but that Petitioner went along with him this time since he did not know exactly where he was going. Petitioner's defense at trial was that he was with Garcia only to show him how to get to Virginia. Garcia knew that Petitioner and his family took vacations in Virginia. Defense Counsel Witherell should have used this statement during Garcia's examination to both support Petitioners' defense and to impeach Garcia's credibility. Garcia also entered into a favorable plea agreement with the State to get out of prison as soon as possible. Garcia was a liar and had every reason to keep lying. Witherell failed to attack Garcia's statements. In

addition, Witherell did not object when Garcia testified at trial that he had previously lied to the police because he did not want to get "other people" involved. The fact that "other people" may have been involved was unknown to him and this was Brady material, and it should have been disclosed by the State to Petitioner before trial. Defense Counsel Witherell should have either asked for a mistrial or demanded that the State immediately disclose all Brady material to him. Instead, Counsel Witherell did nothing.

## VI.    EXHAUSTION

**7.1**    Consistent with **28 U.S.C. 2254(b)**, all grounds for relief raised in this Memorandum in Support of Petition for a Writ of Habeas Corpus have previously been raised before the Delaware Supreme Court. See **Bodnari v. State, 2003 WL22880372, \*1 (Del. Supr. Dec. 3, 2003)**.

## VII.    ARGUMENT

**8.1    CLAIM 1. THE STATE OF DELAWARE VIOLATED PETITIONER'S DISCOVERY RULES AND THE FUNDAMENTAL REQUIREMENTS OF BRADY V. MARYLAND AND NAPUE V. ILLINOIS BY FAILING TO DISCLOSE IMPEACHING AND EXCULPATORY EVIDENCE REGARDING CO-DEFENDANT GARCIA AND BY ALLOWING GARCIA TO PRESENT FALSE AND MISLEADING TESTIMONY, THEREBY VIOLATING PETITIONER'S SIXTH AMENDMENT RIGHT TO DUE PROCESS OF LAW UNDER THE UNITED STATES CONSTITUTION.**

Petitioner (hereafter – Bodnari) argues that (1) the Respondents (hereafter – State) violated **Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)** and it's progeny, and (2) that there was an acceptable 'cause' for his failure to raise this claim in State Court on direct appeal; and (3) that he suffered prejudice sufficient to excuse his procedural default, **at 266,** because the State failed to give Bodnari's counsel "Witherell"

access to all of the evidence in the Sussex County Prosecutor's files. Bodnari's counsel did not act appropriately or specifically "object" when "Garcia" testified at trial that he had previously lied to the police because he did not want to get "other people" involve, **id at VI.** "Factual and Legal Support". The Pennsylvania State Court entered a sealed, ex party order in regard to these "other people" who may have been involved which was exculpatory evidence, which was unknown to Bodnari, and that this was Brady material, which should have been disclosed by the State to Bodnari before trial. Moreover, Counsel Witherell should have either moved for a mistrial or demanded that the State immediately disclose all Brady material to Bodnari. But Witherell did nothing.

Bodnari asserts the issue for this Court to consider is (1) whether the State violated **Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)** and it's progeny; (2) whether there was acceptable 'cause' for Bodnari's failure to raise this claim in State Court; and (3) if so, whether he suffered prejudice sufficient to excuse his procedural default, **\* at 266**. Because the prosecutor (Gelof) maintained an open file policy "States Response to New Trial", which gave Bodnari's counsel (Witherell) access to all of the evidence in the Sussex County Prosecutor's files, Bodnari's counsel filed a pre-trial motion for discovery of possible exculpatory evidence, **\* at 276 (footnotes omitted)**, however Counsel Witherell had been granted the right to examine and to copy all of the police and prosecution files in the case...that open file policy led to Bodnari's Counsel Witherell's first examination of the exculpatory materials at issue, **at 278 (citations omitted)**; "There are three components of a true **Brady** violation: the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued" **at 281-82**; Because the State has alleged that Bodnari's **Brady** claim is procedurally defaulted, this Court must first decide whether the alleged default is excused by an adequate showing of cause and prejudice. In Bodnari's case, cause and prejudice parallel all three of the three components of the **Brady** violation itself. The suppression of the April, 2000 interview between Detective Goode and co-defendant Garcia. Said evidence was exculpatory in nature in that it would have clearly demonstrated that Garcia lied when he was interviewed by Detective Goode and Gelof on March 10, 2000. Garcia stated that Bodnari was the "top dog", that he

owned restaurants, a garage, a water ice business, houses and a bar. However, when Detective Goode investigated these facts it was determined that none of Garcia's statements were true. See March 10, 2000 interview. Subsequently, Detective Goode again went to interview Garcia after discovering that his statements given on March 10, 2000 were untrue. This allegation is predicated upon the basis that Garcia's trial testimony on cross-examination by Witherell clearly demonstrates beyond doubt that Garcia lied on March 10, 2000 because he did not want to get a couple of other people involved. The facts clearly show that on March 10, 2000 Garcia had been offered an accepted a deal and as part of the deal, Garcia had promised to give the true facts surrounding the arrest of Bodnari and Garcia on September 19, 1999. However, Garcia's trial testimony clearly shows that he lied on March 10, 2000 and that he sat down again with Detective Goode and told him the true story once again. See trial transcript, page 226. These material facts the State cannot claim that it was unaware that Garcia's testimony changed from that of March 10, 2000 since it is clear from the trial transcripts where it shows on Garcia-direct that the State was aware that his testimony was going to be different than the statement he had made on March 10, 2000 constitutes one of the causes for the failure to assert a **Brady** claim in the State courts, and since those documents were 'material' for **Brady** purposes, their suppression gave rise to sufficient prejudice to overcome the procedural default, **\* at 282**. Three factors explain why trial counsel Witherell did not advance [the] **Brady** claim; the documents were suppressed by the State; the prosecutor "Gelof" maintained an open file policy; and trial counsel Witherell was not aware of the factual basis for the claim. The First and Second factors, i.e., the non-disclosure and the open file policy – are both fairly characterized as conduct attributable to the State that impeded trial counsel's access to the factual basis for making a **Brady** claim. Bodnari asserts, as the Supreme Court explained in **Murray v. Carrier, 477 U.S. 478, 488, 106 S.Ct. 2678, 91 L.Ed.2d 397 (1986)**, "It is just such factors that ordinarily establish the existence of cause of procedural default", **at 283 (footnotes omitted)**; "[1] f a prosecutor (accord Gelof) asserts that he complies with Brady through an open file policy, defense counsel (accord Witherell) may reasonably rely on that file to contain all materials the State is constitutionally obligated to disclose under Brady," **at 283, n.23;** Respondents position on the cause issue is particularly weak in Bodnari's case because the State Court proceedings record supports Bodnari's justification for his failure

to raise a **Brady** claim on direct appeal. When Bodnari alleged that his trial counsel had been ineffective because he had not advanced such a claim, the trial court judge responded by pointing out that: "I have concluded that this argument is without merit because there was nothing for Witherell to do." **Id. At Court's Memorandum Opinion – Motion for Post Conviction Relief, p. 10.**

In other words, Bodnari asserts that the Court's statement above-referenced infers that there was nothing for Witherell to do because he was voluntarily given full disclosure of everything known to the State! Given that representation, Bodnari had no basis for believing the State had failed to comply with **Brady** at trail, **\* at 287 (footnotes omitted)**. There is no suggestion that tactical considerations played any role in Bodnari's failure to raise his **Brady** claim in State Court. Moreover, under **Brady**, an inadvertent non-disclosure has the same impact on the fairness of the proceedings as deliberate concealment, **\* at 288**. In summary, Bodnari has established cause for his alleged failure to raise a Brady claim prior to Federal habeas because (a) the prosecution with held exculpatory evidence; (b) Bodnari reasonably relied on the prosecution's open file policy as fulfilling the prosecutions duty to disclose such evidence; and (c) the State confirmed Bodnari's reliance on the open file policy by asserting on record "that Bodnari had already received everything known to the government". See **Court's Memorandum Opinion for Post Conviction Relief, p. 10**.

This Court need not decide in Bodnari's case whether anyone or two of these factors would be sufficient to constitute cause, since the combination of all three surely suffices, **\* at 289 (footnote omitted)**. Bodnari has satisfied all three of the three components of a constitutional violation under **Brady**: exculpatory evidence and non-disclosure of this evidence by the prosecution. Bodnari has also demonstrated cause for failing to raise this claim during trail or on direct appellate review. Bodnari has also shown that there is a reasonable probability that his conviction or sentence would have been different had these materials been disclosed. He has therefore shown materiality under **Brady** or prejudice from his alleged failure to raise the claim earlier, **\* at 296.**

Ultimately, the long-suppressed evidence came to light. Bodnari thus asserts, when police or prosecutors conceal significant exculpatory or impeaching material in the State's possession, it is ordinarily incumbent on the State to set the record straight. See **Banks v. Dretke, 540 U.S. 668, 124 S.Ct. 1256 L.Ed.2d 1166 (2004) at 657-76; Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963),** held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution...the Supreme Court set out in **Strickler v. Greene, 527 U.S. 263, 281-282, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)** three components or essential elements of a **Brady** prosecutorial misconduct claim; 'The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently, and prejudice must have ensued'....'cause and prejudice' in Bodnari's case parallel all three of the three components of the **Brady** violation itself...corresponding to the second **Brady** component (evidence suppressed by Gelof). Bodnari shows case when, as here, the reason for his alleged failure to develop facts in State Court proceedings was the State's suppression of the aforementioned relevant evidence, coincident with the third **Brady** component (prejudice), prejudice within the compass of the 'cause and prejudice' requirement exists when, as here in Bodnari's case, the suppressed evidence is 'material' for **Brady** purposes. As to the first **Brady** component (evidence favorable to the accused), beyond genuine debate, the suppressed evidence relevant in Bodnari's case here, Garcia's statement of "other people" qualifies as evidence advantageous to Bodnari. The Supreme Court determined that in the federal habeas proceedings, the **Strickler** petitioner had shown cause for his failure to raise a **Brady** claim in State court. Three factors accounted for that determination; (a) the prosecution with held exculpatory evidence; (b) petitioner reasonably relied on the prosecution's open file policy as fulfilling the prosecutions duty to disclose such evidence, and (c) the [State] confirmed Petitioner's reliance on the open file policy by asserting during State habeas proceedings that Petitioner had already received everything known to the government, **\* at 692-93 (citations omitted)**. Bodnari's case is congruent with **Strickler** in all three respects. First, the State knew but kept back Garcia's statements with Detective Goode...(**F. Kyles v. Whitley, 514 U.S. 419, 437, 1153 S.Ct.**

**1555, 131 L.Ed.2d 490 (1995)**(prosecutors are responsible for any favorable evidence known to the others acting on the governments behalf in the case, including the police). Second, the State asserted that it would disclose all **Brady** material…As **Strickler** instructs, Bodnari cannot be faulted for relying on that representation, **\* at 693 (citations omitted)**; third, the State confirmed Bodnari's reliance on the prosecution's representation that it had fully disclosed all relevant information it's file contained.   In short, because the State persisted in hiding Garcia's interview statements with Detective Goode about "other people" and misleadingly represented that it had complied in full with it's **Brady** disclosure obligations, Bodnari had cause for failing to investigate, in State post conviction proceedings, Garcia's connections to Detective Goode, **\* at 693 (citations omitted)**.

On the question of 'cause', moreover, Bodnari's case is stronger than was the petitioners' in **Strickler** in a notable respect.  As a prosecution witness in the guilt phase of Bodnari's trial, Garcia repeatedly misrepresented his dealings with the police.  Each time Garcia responded untruthfully, the prosecution "Gelof", allowed his testimony to stand uncorrected.  It has long been established that the prosecutions deliberate deception of a court and jurors by the presentation of know false evidence is incompatible with rudimentary demands of justice.  **Giglio v. U.S., 405 U.S. 150, 153, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972)(quoting Mooney v. Holohan, 294 U.S. 103, 112, 55 S.Ct. 340, 79 L.Ed 791 (1935)(per curian))**.   If it was reasonable for Bodnari to rely on the prosecutions full disclosure representation, it was also appropriate for Bodnari to assume that his prosecutors would not stoop to improper litigation conduct to advance prospects for gaining a conviction, **\*at 694 (footnote and citations omitted)**.   The State here, urges in effect, that the prosecution can lie and conceal and the prisoner still has the burden to …discover evidence…equivalent to … a rule thus declaring 'prosecutor may hide, defendant must seek', is not tenable in a system constitutionally bound to accord defendants due process, **\*at 696 (citations omitted)**.  In summary, Bodnari's prosecutors represented at trial and in State post conviction proceedings, that the State had held nothing back.  Thus, Bodnari has shown cause for failing to present evidence in State Court capable of substantiating his Garcia **Brady** claim, **\*at 698 (citations omitted)**.

The touchstone of materiality is **Kyles v. Whitley, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)**. **Kyles** instructed that the materiality standard for **Brady** claims is met when 'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict'. In short, Bodnari must show a reasonable probability of a different result, **\*at 698-99 (citations omitted)**. As the State acknowledges, Garcia was rewarded for a critical role in the scenario that led to the conviction. Instead of getting 3 years minimum mandatory, Garcia would get 18 years minimum mandatory if he did not tell the truth on March 10, 2000, that he would lose the deal that he had with the State and the State could use his prior statements of September 19th and 20th, 1999 and March 10, 2000 and convict him. In spite of this, Garcia's declaration, presented to the Trial Court asserts that he still lied to the State on March 10, 2000 and the reason given by him at trial in July, 2000 was because he did not want to get a couple of other people involved in it, trial transcript B-226 (Garcia). Had the State not suppressed this discovery of names of other people, which he freely gave to the State during interviews with Detective Goode, the prosecution would have had slim, if any, evidence that Bodnari committed the crimes for which he was convicted. Garcia's admission about these other people, i.e., drug dealers, moreover would have damaged the prosecutions zeal in urging the jury to bear in mind Bodnari being the top dog, **\* at 699 (footnote and citations omitted)**. Without Garcia's testimony, the State had no case against Bodnari. The stress placed by the prosecutor, Gelof, on this part of Garcia's testimony, uncorroborated by any other witness, belies the State's suggestion that Garcia's testimony was adequately corroborated or cross-examined. Defense Counsel Witherell's "Statement of Fact", trial transcript C124-25, moreover, left no doubt about the importance the State attached to Garcia's testimony. One can hardly be confident that Bodnari received a fair trial, given the jury's ignorance of Garcia's true role in the investigation and trial of the case. On the record before this Federal habeas court however, one cannot plausibly deny the existence of the requisite 'reasonable probability of a different result' had the suppressed information been disclosed to the defense. Thus, all three elements of a **Brady** claim are satisfied, **at 702-03 (citations omitted)**.

## ARGUMENT

**9.1   CLAIM2.   PETITIONER RECEIVED DEFICIENT LEGAL REPRESENTATION PRIOR TO TRIAL FOR TRIAL COUNSEL'S FAILURE TO INVESTIGATE AND PREPARE A DEFENSE IN VIOLATION OF PETITIONER'S SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE UNITED STATES CONSTITUTION.**

The longstanding test for ineffective assistance of counsel is stated in **Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)**. **Strickland** requires a showing that trial counsel's representation fell below an objective standard of reasonableness and that the defendant suffered prejudice, in that there is a reasonable probability that but for counsel's errors, the result of that proceeding would have been different.

Bodnari asserts that his trial counsel failed to acquire co-defendant Garcia's statement made to Detective Goode on September 20, 1999, whether on audiotape, a transcription of that tape, or a summary of the interview. Trial Counsel Witherell argued in Bodnari's first Motion for New Trial that he had not received any discovery from the State regarding the September 20, 1999 interview.

Bodnari assets Defense Counsel (Witherell) was provided the contents of only one of co-defendant Garcia's statements. Specifically, the State provided the transcript of an interview conducted on March 10, 2000, Defendants Memorandum Of Law In Support Of Motion For New Trial filed by Witherell on July 27, 2005, page (ß-l) No further video tape, transcript(s), notes, or otherwise discoverable materials were provided to the defense with respect to this, or any of the other interviews notwithstanding the disclosure of the March 10, 2000 interview, after review to Ronald Phillips, Esquire, **Id.** (ß-2).

Furthermore, Witherell in Defendants Reply In Support Of Motion For New Trial, March 26, 2002 states no other transcripts or recordings were provided to counsel

through prior defense counsel or through this counsel's discovery request...regarding Garcia on September 20, 1999, nothing was received, **Id(ß-3-4)** It seems quite unusual that despite having writer a full report with respect to Garcia's September 20, 1999 statement, the officer relied on only hand sketched notes, apparently contradicting his report, to refresh his recollection, **Id (ß5]**. At this time counsel has now had the opportunity to review a report, apparently produced by Detective Goode during the course of the interview. The report is essentially a summary of the interview with co-defendant Garcia and not verbatim. A review of this document reveals information that was not only discoverable but was critical to the preparation and presentation of any defense, **Id (ß6)** The trial transcript is quite clear that any specific instance cross-examination of co-defendant Garcia was limited to the March 14, 1999 (should be 2000) audio taped transcript of the March 10, 2000 interview with Detective Goode. Co-defendant Garcia, Counsel Sodomsky, Counsel Vickers, a paralegal and Mr. Gelof. All relevant cross examination was prepared from and conducted from this prior inconsistent statement, **Id (ß-7)** However, in response the Bodnari's Rule 61 Motion for Post Conviction Relief, Defense Counsel Witherell in his affidavit dated November 22, 2004, contradicts himself stating that he did receive a copy of the September 20, 1999 statement of co-defendant Garcia in the report of Detective Goode, pre-trial. A copy of this report was provided to Defendant Bodnari with all other discovery, as was discussed. In fact, Counsel visited Reading, Pennsylvania to review travel patterns, the Bitchin' Kitchen and to speak with Sam (though he refused to admit me into the house or to discuss the matter). The investigation was based largely on this report. As previously stated, Counsel did receive a copy of the September 20, 1999 report, pre-trial. Counsel recalls discussing the report with Defendant Bodnari and performing certain investigations consistent with it's content. Counsel recognizes that this representation appears inconsistent with his argument for new trial, however; it appears arguments are taken out of context and/or there was excusable mistake/confusion. Counsel admittedly became confused upon subsequent submissions. The paperwork in this file was quite extensive and it appears to the embarrassment of counsel that the September 20, 1999 report was not filed properly with the other statements thus went un-noticed. As the Court is aware, Counsel made an impassioned argument for a new trial in the absence of this report. The Court has already rejected the argument. Counsel is unaware at this date the circumstances under which, in

his reply, Counsel noted he had just reviewed the statement. Bodnari ultimately states that Witherell failed to investigate before trial, failed to acquire, produce, become familiar with or use to prepare for trial any part of Garcia's statements made to Detective Goode on September 20, 1999 whether it was a summarized report or an audiotape.

Specifically, an attorney rather clearly has a duty to familiarize himself with the 'discovery' materials provided by the State. Because Counsel Witherell failed in this regard here, his behavior was not objectively reasonable under **Strickland**. Admittedly, Counsel Witherell's lack of familiarity with the case, combined with his failure to investigate, provided Bodnari with a trial significantly different than the trial he might have received if representation by a competent attorney. There exist, in short, a reasonable probability that the outcome would have been different. Counsel Witherell's various failures have called the fairness of Bodnari's proceedings into question.

## ARUMENT

10.1   **CLAIM 3. PETITONER RECEIVED DEFICIENT LEGAL REPRESENTATION DUE TO COUNSEL'S FAILURE TO OBJECT TO CO-DEFENDANT GARCIA'S TESTIMONY IN REGARD TO KNOWN FACTS WHICH WOULD HAV LEAD INEVITABLY TO THE CONCLUSION THAT GARCIA WAS CONCEALING NAMES AND PROTECTING THE IDENTITY OF DRUG DEALERS, WHICH WOULD HAVE EXONERATED PETITIONER COMBINED WITH COUNSEL'S ACCUMULATION OF ERRORS SUCH THAT PETITIONER WAS PREJUDICED RENDERING HIS TRIAL PROCEEDINGS FUNDAMENTALLY UNFAIR THEREBY VIOLATING HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AND FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS OF LAW UNDER THE UNITED STATES CONSTITUTION.**

Bodnari claims, as he did below, that trial counsel Witherell failed to object to his co-defendant Garcia's testimony in regard to known facts which would have lead inevitably to the conclusion that Garcia was concealing names and protecting the identity

of drug dealers which would have exonerated Bodnari combined with Witherell's accumulation of errors such that he was prejudiced rendering his trial fundamentally unfair thereby violating his Sixth Amendment Right to effective assistance of counsel and Fourteenth Amendment Right to due process of law under the United States Constitution. Specifically, Counsel failed to develop and raise the Brady violation on direct appeal, failed to investigate Garcia's statements, failed to effectively cross-examine Garcia, and failed to recall Detective Goode. The due process clause of the Fourteenth Amendment guarantees a criminal defendant the effective assistance of counsel on a first appeal, as of right. The facts as asserted herein in support of Bodnari's claims rise above mere allegations of ineffectiveness of Witherell – they substantiate "concrete" evidence of "actual prejudice". **Strickland v. Washington, 466 U.S. 668** provides the proper framework for evaluating Bodnari's claim that his former counsel (Witherell) was constitutionally ineffective and this was not properly done by the State Court. Bodnari's right to effective assistance of counsel applies not just at trial, but also on direct appeal. The facts show that Counsel Witherell at trial failed to compel the State to produce the names of the other people, which was exculpatory evidence. Therefore, Witherell was ineffective for his failure to subject the prosecution to meaningful adversarial challenge. In **Davis v. Alaska, 415 U.S. 308, 39 L.Ed.2d 347, 94 S.Ct. 1105 (1974)** the Supreme Court held that the main and essential purpose of the Sixth Amendment right to confrontation is to secure the opportunity of "cross-examination". The Court added, "A more particular attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case in hand. The partiality of a witness (accord – Garcia) is subject to exploration at trial, and is 'always relevant as discrediting the witness and affecting the weight of his testimony. The Supreme Court further stated, "We have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination" (citations omitted).

Viewing the total picture and considering both the nature of the material and testimony presented to the jury that should not have been and the nature of the material and testimony not presented to the jury that should have been, this habeas court cannot

have much confidence in the jury's weighing of the factors relevant to the issues of whether or not Bodnari's counsel's failure to object was cause and prejudice for reversal. Bodnari's fate was settled long before his trial in July, 2000. Counsel's overall performance, including his decision not to pursue or put on any witnesses of "other people", i.e., "drug dealers", in support of a viable theory of defense, falls outside of the wide range of professionally competent assistance...counsel tempted fate when he decided not to object or ask for a mistrial or ask the court to order the state to produce the names of the people that Garcia was with holding.

Simply put, the confidence in the outcome of Bodnari's trial has been undermined. This Court cannot say that the trial – turning as it did on the questionable testimony of a single witness (Garcia) -- can be relied on as having not prejudiced Bodnari, or that there is a reasonable probability that, but for counsel's unprofessional errors, the result of Bodnari's trial would have been different.

## ARUMENT

**10.2    CLAIM 4.  THE SUPERIOR COURT VIOLATED BODNARI'S RIGHT TO DUE PROCESS OF LAW UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION BY DENYING BODNARI HIS RIGHT TO NOTICE AND OPPORTUNITY TO BE HEARD BY FAILING TO PROVIDE HIM WITH COPIES OF ATTORNEY'S RESPONSES FILED BY THE STATE AND DEFENSE COUNSEL AND BY ISSUING SUMMARY JUDGMENT IN FAVOR OF THE STATE WITHOUT AFFORDING BODNARI AN EVIDENTIARY HEARING ON HIS RULE 61 MOTION FOR POST CONVICTION RELIEF.**

Bodnari asserted in the Court-below that he was denied his right to notice and opportunity to be heard regarding his Rule 61 Motion for Post Conviction Relief when the Court failed to provide him with copies of responses filed by the State and defense counsel and an opportunity to respond to those responses and for dismissing his Rule 61 Motion without affording him an evidentiary hearing where there were genuine issues as to material facts in dispute. On the contrary, the State concedes that the record reveals

that both Bodnari's trial counsel and the prosecutor filed responses and that Bodnari had a right to receive those responses filed by that State and his defense counsel under **Super. Ct. Crim. R. 61(g)(3)**, but somehow complains that the Court's failure to provide him with these documents and an opportunity to respond was harmless error. Clearly however, **Rule 61(g)(3)** compels that said submissions shall be submitted to the opposing party, who shall be afforded an opportunity to admit or deny their correctness. Specifically though, the Court-below violated Bodnari's constitutional right to due process of law under the United States Constitution by denying him notice and opportunity to respond to the State's and his trial counsel's responses wherein the trial judge Bradley made the following statements concerning Detective Goode's September 20, 1999 report:

> "The fact that Witherell did not listen to the tape is irrelevant because
> he reviewed Goode's police report, which accurately summarized Goode's
> statements." **Id at Superior Court's Decision, page 10.**

It is clear that the Superior Court made a decision based on information that is not only clearly erroneous, but also material facts in dispute which is why the Court abused it's discretion for failing to order an evidentiary hearing to resolve these genuine issues of material facts in dispute concerning whether Witherell in fact had Detective Goode's supplemental report (pre-trial) or as the earlier record in fact, clearly shows that Witherell and Bodnari did not see this report until prosecutor Gelof made it available to them in his response to Witherell's Motion for New Trial 1-1/2years after trial. By failing to afford Bodnari his right to notice and opportunity to be heard, to subject the State's and Witherell's responses to a meaningful adversarial testing to admit or deny the correctness of the issues denied Bodnari his constitutionally protected right to due process of law under the Fourteenth Amendment to the United States Constitution and Article 1, Section 7 of the Delaware Constitution. Bodnari was denied also his constitutional right to effective assistance of counsel under the Sixth Amendment and his substantive right to due process under the Fourteenth Amendment to the United States Constitution by Witherells' failure to acquire Detective Goode's September 20, 1999 pre-trial report. Moreover, the State knew prior to trial that it's star witness, Garcia, had withheld critical

20

information from the State on March 10, 2000 and that at a later date, Garcia had sat down with Detective Goode and gave him the true story about the names of "other people" who could exonerate Bodnari about the fact that Bodnari did not know anything about drugs being maintained in the vehicle which he was in when pulled over by the police. Additionally, to date the State has failed to disclose this exculpatory evidence to Bodnari in violation of **Brady v. Maryland** and Jenks and Witherell's failure to object or request a mistrial on this discovery violation or even attempting to obtain said discovery material with would have exonerated Bodnari constitutes ineffective assistance of counsel.

In essence, Bodnari asserts that the Superior Court granted summary judgment to the State with respect to Bodnari's Rule 61 claims that he was entitled to due process notice and opportunity to be heard on said attorney's responses and an evidentiary hearing before the Court's sua sponte summary dismissal. In fact, no discovery was taken by Witherell and no additional discovery was undertaken by the Court on Bodnari's Rule 61 claims. The standard governing the disposition for summary dismissal for post conviction relief is based upon whether or not the Rule 61 Motion and the record of prior proceedings is the case that the movant is not entitled to relief but as to each new issue, the Court must distinguish any issue which requires a hearing for determination from those which do not and must state the reason why defendant is not entitled to a hearing on a particular issue. See, **Derrickson v. State, Del. Supr. 399 A.2d 202 (1979)**. Under the summary judgment standard, the Court is required to view the facts in light most favorable to Bodnari and to then determine whether the attorney's have established that there are no material issues of fact in dispute and that they are entitled to judgment as a matter of law. See e.g., **United Vanguard Fund v. Takecare, Inc., Del. Supr. 693 A.2d 1076, 1079 (1997); In re Unisys Saving & Plan Litigation, 74 F.3d 420, 433 n.10 (3rd Cir. 1996)(the party opposing the motion is entitled to have his allegations taken as true, to receive the benefit of doubt when his assertions conflict with these of the movant, and to have inference from the underlying facts drawn in his favor)**. Furthermore, in discharging this function, the role of the court is not to weigh the evidence and resolve issues of fact, but rather to determine the existence of disputed issues of fact, **Morrill v. Crothall-American, Inc., Del. Supr. 606 A2d 96, 99**

**(1992)(role of trial court on summary judgment is to identify disputed factual issues whose resolution is necessary to decide the case, but not to decide such issues)**; **In re Unisys Savings Plan Litigation, supra., (when deciding a motion for summary judgment…it is inappropriate for a court to resolve factual disputes and to make credibility determinations)**.   The Court denied Bodnari's due process and evidentiary hearing without notice and opportunity to protest on genuine material facts clearly in dispute in violation of Bodnari's constitutional rights under the Fourteenth Amendment to the United States Constitution.

## VIII.  **RELIEF REQUESTED**

**WHEREFORE**, Petitioner Julian Bodnari prays that this Court:

1.  Permit Petitioner to file this Memorandum in Support of his 2254 Petition for a Writ of Habeas Corpus.

2.  Permit Petitioner to amend his Petition to include an additional claims or allegations not presently known to him or his former counsel, that are identified or uncovered in the course of review, discovery, investigation and litigation of this habeas corpus petition.

3.  Require Respondent to file an Answer to this Petition in the form prescribed by Rule 5 of the Rules Governing Cases in the United States District Court, identifying all State proceedings conducted in Petitioner's case, including any proceedings that have not been recorded or transcribed, and specifically admitting or denying the factual allegations set forth in this Petition.

4.  Permit Petitioner to respond to any affirmative defenses raised by Respondent in his Answer.

5.  Require Respondent to bring forth and file with this Court accurate and complete copies of all documents and proceedings relating to Petitioner's conviction and sentence, including the records and transcripts in **State v. Bodnari, 2002 WL32071648 (Del. Super. June 14, 2002), State v. Bodnari, NOT REPORTED in A.2d 2002 WL32071664; Bodnari v. State, 839 A.2d 665, 2003 WL22880372, and State v. Bodnari, NOT REPORTED in A.2d 2005, WL589932.**

6.  Permit Petitioner to utilize the procedures for discovery in Habeas Corpus Rule 5, and Fed. R. Civ. P. 26-37 to the extent necessary to fully develop and identify the

facts supporting this Petition and any defenses thereto raised by Respondent's Answer.

7.  Conduct an Evidentiary Hearing to resolve any factual disputes raised in relation to the claims in this Petition by Respondent's Answer to this Petition, or by Petitioner's response to any of the affirmative defenses raised in Respondent's Answer.

8.  Allow Petitioner sufficient time to brief the issues of law raised by this Petition.

9.  Issue a Writ of Habeas Corpus to direct Respondent to release the Petitioner from custody, unless he is given a new trial or new proceedings are conducted to cure all constitutional defects in the State proceedings that resulted in Petitioner's present conviction and sentence.

10. Appoint counsel to Petitioner pursuant to **Section 3006A of Title 18, United States Code.**

11. Grant such other and further relief as may be appropriate.

Dated this __12__ Day of __April__, 2006.

Respectfully Submitted,

Julian Bodnari
Delaware Correctional Center
1181 Paddock Road
Smyrna, Delaware