IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JULIAN BODNARI,                              )
      Petitioner,                          )
  v.                                         ) Civ. Act. No.06-257-GMS
THOMAS C. CARROLL,                           )
Warden, and CARL C. DANBERG,                 )
Attorney General for the State of Delaware. )
      Respondents.                         )
                                     )

PETITIONER'S TRAVERSE TO RESPONDENTS'
ANSWER/EVIDENTIARY HEARING REQUESTED

I. CUSTODY

      Petitioner, Julian Bodnari (hereafter,Bodnari) AGREES THAT HE IS IN CUSTODY AS STATED IN THE ANSWER. Bodnari claims that he is not "lawfully" in custody because of the VIOLATIONS OF HIS RIGHTS UNDER THE U.S. CONSTITUTION that are alleged in the Petition for Writ of Habeas Corpus and herein. Except as expressly admitted herein, Bodnari denies each and every allegation of the Answer and re-affirms that his confinement is in violation of the Constitution.

II. STANDARD OF REVIEW

      Bodnari argues that Respondents"Standard of Review" contains an accurate summary of the governing law regarding the deference due under the AEDPA to state court adjudications on the merits. On the other hand, Respondents omits entirely from its discussion what may be the most important standard of review to be considered at this juncture in the litigation, the standard this Court must apply in deciding whether or not to grant Bodnari an Evidentiary Hearing on one or more of the habeas corpus claims. Carter v. Rafferty, 826 F.2d 1299, 1306, 8 Fed. R. Serv.3d 962 (3d Cir. 1987)(holding that the materiality of evidence under Brady v. Maryland,373 U.S. 83,83 S.Ct. 1194,10 L.Ed. 2d 215 (1963) is a mixed question of law and fact, not entitled to the presumption of correctness). Compare Burden v. Zant,498 U.S. 433,436-38,

111 S.Ct. 862, 112 L.Ed.2d 962 (1991)(per curiam)(applying the presumption of correctness in the Petitioner's favor in a case involving a conflict of interest in an attorney's simultaneous representation of a co-defendant; stating: "The Court of Appeals did not even mention the trial court's finding that[a particular witness] received immunity, much less explain why that finding is not entitled to a presumption of correctness" at 437)(emphasis in original). To the limited extent that the state court did determine the operative "facts" regarding Bodnari's habeas corpus claims, those factual findings were based on unreasonable determinations of the state court evidence presented, and are contradicted by clear and convincing contrary evidence submitted in the petition and herein.

Specifically, Bodnari raised an intrinsic challenge to the facts as found by the state court, thus, the state-court's findings cannot be dressed in a presumption of correctness. The state court should have made a finding of fact but neglected to do so. Thus, the state-court factual determination is perforce unreasonable and there is nothing to which the presumption of correctness can attach.

In addition, the state court s plainly misapprehend or misstate the the record in making the findings, Id. Respondents Answer, passim, and the misapprehension goes to material factual issues that are central to Bodnari's claims and said misapprehension totally undermined the fact-finding process rendering the resulting factual finding unreasonable.... And...the state-court fact-finding process was undermined because the state-court had before it, yet ignored, evidence that supported Bodnari's claims. See Taylor v. Maddox, 366 F.3d at 1001 (9th Cir.2004),(citations omitted). The Respondents Answer alleges that:"Bodnari has not presented any evidence to rebut the presumption that the state court correctly found that the April 2000 interview did not occur. Id. at Respondents Answer, p. 5." The record also clearly reflects that the state acknowledged that prosecutor Gelof and detective Goode came to the prison sometime ...after March 10, 2000 to trial prep Bodnari's co-defendant Garcia but the record omits the April 2000 date wherein said interview was conducted. Bodnari asserts, however, that the state failed to disclose any discovery after March 10, 2000, but the record clearly shows that Garcia

lied on March 10, 2000. See Trial Transcripts, B-226. These documents were suppressed by the state. Simply put, once it was determined that Garcia had lied in the March 10, 2000 interview, the state was compelled to conduct the [subsequent] interview with Garcia that Bodnari makes reference to held in April 2000. To do otherwise would be a miscarriage of justice. Based upon these material facts, this federal court must reject Respondents assertions that Bodnari has not presented any evidence to rebut the presumption that, "the state court correctly found that the April 2000 interview did not take place." Moreover, it is completely irrelevant whether or not Bodnari has pinpointed a precise date and time in regard to the April 2000 interview between prosecutor Gelof and detective Goode and Garcia because its a given that the state had to conduct another interview of Garcia because it was determined in the March 10, 2000 interview that Garcia had lied. The record clearly shows that Garcia gave names of "other people" after the March 10, 2000 interview and to date, Bodnari still has not received from the state discovery of the names of these "other people" in regard to the subsequent interview that took place after March 10, 2000. The Respondents contention that the April 2000 interview did not take place or either was part of a normal trial preparation of Garcia, under these facts and circumstances outlined in the record, belies the clear facts on the face of the record. Again, see Trial Transcripts, B-226. See also, the state's response to Bodnari's "Motion for New Trial" filed in the Superior Court, at Appendix A-43.

In Mooney v. Holohan, 294 U.S. 103, the Court held that a state violated a defendant's due process rights by delibertly using testimony which it knew to be perjured. Napue v. Illinois, 360 U.S. 264 extends this rule to cases where the state did not engineer the perjured testimony, but knowingly allowed it to remain uncorrected. Drawing on these precedents, the court holds in Brady v. Maryland, 373 U.S. 83,87 (1963) that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Moreover, United States v. Agurs, 427 U.S. 97 (1974), notes that <u>Brady</u> can apply to suppression questions in three different situations: when the prosecution knowingly uses perjured testimony, when the prosecution fails to comply with a specific pretrial request for evidence, and when the defense makes a general, non specific

request for <u>Brady</u> material or fails to make any request at all. Thus, pursuant to Superior Court Criminal Rule 16, all relevant recorded or written statements of Bodnari's co-defendant Garcia must be provided, if they are in the possession of the state. In essence, <u>Brady</u> requires the state to disclose exculpatory ev-dence, in its possession, which is material to the guilt or punishment of the defendant. This has been deemed to include information in the possession of the state which is material to impeachment of a state's witness. United States v. Bagley, 473 U.S. 667 (1985). The <u>Brady</u> rule also encompasses deals or promises between the state and its trial witnesses. Giglio v. United States, 405 U.S 150(1972).

Bodnari, thus, has made a sufficient showing of actula innocence in both the state and federal courts which entitles him to an evidentiary hearing because Petitioner (1) was denied an evidentiary hearing in state court and (2) acted with "reasonable diligence" in developing his claim in state court. Petitioner's pleadings in the state court adequately alleged facts which would entitle him to relief, but the state court denied his request nonetheless for an evidentiary hearing. This federal court is required by federal law to accept as true any and all factual allegations that are made and supported in federal court, since the state court has made findings against Bodnari on those facts without first ordering a hearing. Thus, the state's fact-finding procedure is "unreasonable," which means that the state's factual-findings are not binding on federal habeas corpus. See Taylor v. Maddox, 366 F.3d 992,1001 (9th Cir. 2004). The state court made bad factual findings in Bodnari's case without first granting a hearing. Bodnari requested an evidentiary hearing at every level of the state court system in his pleadings. In addition Bodnari's factuls allegations were supported by proof required to be taken as true in his state court proceedings. This proof was supported by evidence contained in his exhibits that Bodnari presented to the state courts to support his pleadings. In state court, Bodnari alleged ineffective assistance of counsel (IAC) and clearly stated in his pleadings what trial and appellate counsel failed to do and submitted documentary evidence to show what an effective lawyer would have done. Petitioner presented his factual allegations to the state's highest court, thus completing the process of exhaustion in state court. Hence, Bodnari has requested an evidentiary hearing in regard to his federal habeas corpus petition after completing exhaustion in state court, and hereby renews that same request in this "Traverse to the Respondents Answer to his federal habeas

petition.

Bodnari further asserts, a petitioner on federal habeas corpus is entitled to an evidentiary hearing where, as here, the petitioner establishes a "colorable" claim for relief, and where the petitioner as here, has never been accorded a state or federal hearing on his claim. See Earp v. Oronski, 431 F.3d 1158,1167 (9th Cir. 2005), citing Townsend v. Sain, 372 U.S. 293 (1963) and Keeney v. Tamayo Reyes, 504 U.S. 1,5, 1992). In stating a "colorable" claim, Bodnari was merely required to allege specific facts which, if true, would entitle him to relief. Moreover, Respondents herein their "Answer" are not entitled to any AEDPA deference since the state has made an "unreasonable" determination of the facts; and where a state court makes, as here, evidentiary findings without holding a hearing and giving petitioner-Bodnari an opportunity to present evidence, such findings clearly result in an "unreasonable" determination of the facts." Taylor v. Maddox, 366 F.3d 992,1001 (9th Cir. 2004).

In sum, an evidentiary hearing in Bodnari's case is required under the AEDPA and an appellate court will remand for a hearing if the district court rules without granting one, where, as here, the petitioner, Bodnari has established a "colorable" claim for relief and has never been accorded a state or federal hearing on his claims. <u>Earp</u>, supra. at 1167. Again, here petitioner-Bodnari requested an evidentiary hearing at every level of the state court proceedings, and each of the courts to which Bodnari applied ruled without granting him an evidentiary hearing.

As a result, (1) Bodnari is entitled to an evidentiary hearing in this court before the court can make any credibility determinations on the facts alleged in the petition and supporting exhibits; and,(2) Any controverted "facts" found by the state court while denying a request for an evidentiary hearing necessarily result from an "unreasonable determination" of the facts, and hence are not entitled to any presumption of correctness. <u>Earp</u>, supra. at 1167; <u>Taylor</u>, supra. at 1101 (where the state court's legal error infects the fact-finding process, the resulting factual determination will be "unreasonable" and no presumption of correctness can attach to it.)

### III. INCORPORATION BY REFERENCE

Petitioner-Bodnari incorporates by reference the petition for writ of habeas corpus, along with all supporting documents,

including the supporting exhibits and points and authorities previously filed.

## PRAYER FOR RELIEF

WHEREFORE, for the reasons set forth herein and in the documents incorporated by reference, Petitioner respectfully requests that the Court:

 (1) Order an Evidentiary Hearing and Appoint Counsel for the Petitioner;

 (2) Grant the Writ of Habeas Corpus, Reverse Petitioner's Conviction, and Order a New Trial;

 (3) Grant all other appropriate relief.

Dated: 09/25/06

*Julian Bodnari* (signature)

Julian Bodnari
Petitioner, In Propria Persona
Delaware Correctional Center
1181 Paddock Road
Smyrna, Delaware 19977

## Certificate of Service

I, __JULIAN BODNARI__, hereby certify that I have served a true

And correct cop(ies) of the attached: __PETITIONER'S TRAVERSE TO RESPONDENTS'__

__ANSWER/EVIDENTIARY HEARING REQUESTED__ upon the following

parties/person (s):

TO: __U.S DISTRICT COURT__

__DISTRICT of DELAWARE__

__844 KING STREET__

__LOCKBOX 18__

__WILMINGTON DE. 19801__

TO: __ELIZABETH R. McFARLAN__

__DEPARTMENT OF JUSTICE__

__820 N. FRENCH STREET__

__WILMINGTON, DE 19801__

TO: _____

TO: _____

BY PLACING SAME IN A SEALED ENVELOPE, and depositing same in the United States Mail at the Delaware Correctional Center, Smyrna, DE 19977.

On this __25__ day of __SEPTEMBER__, 200__6__

_Julian Bodnari_

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR SUSSEX COUNTY

| | |
|---|---|
| THE STATE OF DELAWARE | : |
| | : |
| v. | : ID # 9909027880 |
| | : |
| JULIAN BODNARI | : |

RESPONSE TO
MOTION FOR NEW TRIAL

NOW COMES the State of Delaware, by and through its Deputy Attorney General, Adam D. Gelof, and moves this Honorable Court to deny the Defendant Bodnari's Motion for New Trial based upon the following:

The defendant seeks a new trial pursuant to Superior Court Criminal Rule 33. Rule 33 which governs the consideration of a Motion for New Trial, provides that "the Court on motion of a defendant may grant a new trial to that defendant in the interest of justice". The Constitution affords the Defendant the right to a fair trial, not a perfect one. U.S. v. Hasting, 461 U.S. 499, 508-09 (1983) See also Downes v. State, 1999 WL 743629 (Del. Super.) In the case *sub judice*, Bodnari was afforded a fair trial and the interests of justice do not warrant a new trial.

1. THE VERDICT WAS LEGALLY CONSISTENT.

In his Motion for New Trial, defense counsel alleges the jury's verdicts of guilt as to Counts 1-3, & 5 of the State's indictment was legally inconsistent with its verdicts of not guilty as to Count 4, Maintaining a Vehicle and Count 6, Possession of Drug Paraphernalia (razor blade AND baggie.)

In analyzing an arguably inconsistent jury verdict, this Court follows two alternative

Garcia - Cross                                                B-226

```
 1      Q    Mr. Garcia --
 2      A    That is when they were investigating the
 3   case.
 4      Q    In March of this year?
 5      A    Oh, no.  That is when I sat and talked with
 6   the detective.
 7      Q    That is when you didn't give them the
 8   straight story; right?
 9      A    Because I didn't want to get a couple other
10   people involved in it.  That's why.
11      Q    But then we come up with the deal?
12      A    That deal was already in the picture when I
13   gave them that testimony.
14      Q    But you didn't tell the truth, did you?
15      A    No, I didn't.
16      Q    You just told me now and you just told this
17   jury that you knew you weren't going to get the deal if
18   you didn't tell the truth, and you still didn't tell
19   the truth to him?
20      A    I told him the truth because I talked to him
21   again.
         Q   If what you are telling us here is a little
23   bit different -- even if it is not substantially
```

EILEEN G. KIMMEL
OFFICIAL COURT REPORTER

A67

