# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JULIAN BODNARI, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civ. A. No. 06-257-GMS |
| | ) | |
| PERRY PHELPS, Warden, and | ) | |
| ATTORNEY GENERAL OF THE | ) | |
| STATE OF DELAWARE, | ) | |
| | ) | |
| Respondents.[1] | ) | |

---

Julian Bodnari. *Pro se* petitioner.

Elizabeth R. McFarlan, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Attorney for respondents.

---

## MEMORANDUM OPINION

_____, 2009
Wilmington, Delaware

---

[1] Warden Perry Phelps assumed office in January, 2008, replacing Warden Thomas Carroll, an original party to this case. *See* Fed. R. Civ. P. 25(d)(1).

Sleet, Chief District Judge

## I. INTRODUCTION

Petitioner Julian Bodnari ("Bodnari") is an inmate at the James T. Vaughn Correctional

Center in Smyrna, Delaware. Bodnari filed the pending petition for a writ of habeas corpus

("petition") pursuant to 28 U.S.C. § 2254. (D.I. 1.) The State filed an answer in opposition, and

Bodnari filed a reply. (D.I. 14; D.I. 17.) For the reasons that follow, the court will dismiss

Bodnari's petition in its entirety without an evidentiary hearing.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The relevant facts leading to Bodnari's arrest and conviction are as follows:

In September 1999, Bodnari was clocked driving a Chevrolet Suburban at 72 miles per
hour in a 55 miles per hour zone near Millsboro, Delaware. Delaware State Trooper
Andrel Martinez, who was on routine patrol, pulled Bodnari over. As soon as Martinez
reached the stopped vehicle and started talking to Bodnari, he smelled a strong odor of
marijuana coming from the Suburban. He asked Bodnari and his passenger, Herman
Garcia ["Garcia"], whether they were smoking marijuana and Garcia eventually
responded that he had smoked some earlier in the evening.

Martinez asked Bodnari, who had identified himself as "Mike Allen," to exit the
Suburban. Martinez called for backup and, when another officer and a dog from the K-9
unit arrived, they searched the vehicle, with Bodnari's consent. Martinez eventually
found a football-sized object wrapped in tape, as well as a loaded pistol. The large object
turned out to be slightly over 1,000 grams of cocaine.

Both Bodnari and Garcia were charged with trafficking in cocaine, among other offenses.
Garcia testified against Bodnari as part of a plea bargain. At trial, Garcia testified that
Bodnari asked him to go to Virginia with him to deliver a kilo of cocaine. Garcia
obtained the Suburban from a third party, and the cocaine from a friend of Bodnari. The
gun belonged to Garcia. On the day of the arrest, Bodnari picked Garcia up at a
restaurant, and drove to Garcia's house. There, they transferred the gun and cocaine to
the Suburban before departing for Virginia.

*Bodnari v. State*, 839 A.2d 665 (Table), 2003 WL 22880372 (Del. Dec. 3, 2003).

In July 2000, a Superior Court jury convicted Bodnari of sixteen charges: trafficking in

1

cocaine, possession with intent to deliver cocaine, possession of a firearm during the commission of a felony, carrying a concealed deadly weapon, second degree conspiracy, six counts of second degree forgery, criminal impersonation, and various traffic offenses. *See State v. Bodnari*, 2002 WL 32071664, at *1 (Del. Super. Ct. Dec. 30, 2002). The jury acquitted Bodnari of two additional charges of maintaining a vehicle for keeping controlled substances and possession of drug paraphernalia. *Id.* at *1 n.1. Bodnari filed motions for a new trial and for judgment of acquittal in July 2000, which the Superior Court denied on June 14, 2002. *State v. Bodnari*, 2002 WL 32071648 (Del. Super. Ct. June 14, 2002). Thereafter, in August 2002, Bodnari moved for a new trial based on the State's alleged violation of *Brady v. Maryland*, 373 U.S. 83 (1963) and the discovery of newly discovered evidence, which the Superior Court denied on December 30, 2002. *Bodnari*, 2002 WL 32071664. The Superior Court sentenced Bodnari to thirty-three years of mandatory incarceration followed by probation. Represented by different counsel, Bodnari filed a direct appeal, and the Delaware Supreme Court affirmed his convictions and sentences. *Bodnari v. State*, 2003 WL 227880372 (Del. Dec. 3, 2003).

In June 2004, acting *pro se,* Bodnari filed in the Delaware Superior Court a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61, alleging that (1) trial counsel was ineffective for failing to review the tape of Officer Goode's interview of Garcia and use that information to impeach Goode's credibility; (2) the State violated *Brady* by failing to disclose all of Garcia's statements; and (3) trial counsel was ineffective for failing to request a mistrial after Garcia stated that "other people" were involved in the drug distribution ring. *State v. Bodnari*, 2005 WL 589932 (Del. Super. Ct. Feb. 28, 2005). The Superior Court denied the Rule 61 motion in February 2005, and the Delaware Supreme Court affirmed that decision. *Id.*;

2

*Bodnari v. State*, 2006 WL 155237 (Del. Jan. 18, 2006).

Bodnari timely filed the instant § 2254 petition, and the State filed an answer requesting the court to deny the petition in its entirety. (D.I. 12.) Bodnari filed a reply. (D.I. 17.) His petition is ready for review.

## III. GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003)(internal citations and quotation marks omitted). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see Woodford*, 538 U.S. at 206.

### B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). AEDPA states, in pertinent part:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to

3

the judgment of a State court shall not be granted unless it appears that –

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)(i) there is an absence of available State corrective process; or
   (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding. *See Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997)(citations omitted); *Coverdale v. Snyder*, 2000 WL 1897290, at *2 (D. Del. Dec. 22, 2000). "'Fair presentation' of a claim means that the petitioner 'must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted.'" *Holloway v. Horn*, 355 F.3d 707, 714 (3d Cir. 2004)(citing *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999)).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000); *Wenger v. Frank*, 266 F.3d 218, 223 (3d Cir. 2001); *see Teague v. Lane*, 489 U.S. 288, 297-98 (1989). Nevertheless, such unexhausted claims are procedurally defaulted. *Lines*, 208 F.3d at 160. Similarly, if a state court refused to consider a petitioner's claims for failing to comply with an independent and adequate state procedural rule, the claims are deemed exhausted

but procedurally defaulted. *Harris v. Reed,* 489 U.S. 255, 263 (1989); *Werts*, 228 F.3d at 192.

 Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman v. Thompson,* 501 U.S. 722, 750-51 (1991); *Caswell v. Ryan,* 953 F.2d 853, 861-62 (3d Cir. 1992). To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). A petitioner can demonstrate actual prejudice by showing "not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

 Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency, *Bousley v. United States*, 523 U.S. 614, 623 (1998), and is established if no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Sweger v. Chesney,* 294 F.3d 506, 522-24 (3d Cir. 2002).

### C. Standard of Review Under AEDPA

If a federal court determines that a claim is not procedurally defaulted and the state court adjudicated the federal claim on the merits, the court can only grant habeas relief if the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). A claim is considered to have been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d)(1) if the state court "decision finally resolv[es] the parties claims, with *res judicata* effect, [and] is based on the substance of the claim advanced, rather than on a procedural, or other ground." *Rompilla v. Horn*, 355 F.3d 233, 247 (3d Cir. 2004)(internal citations omitted), *rev'd on other grounds by Rompilla v. Beard*, 545 U.S. 374 (2005).

When reviewing a § 2254 petition, a federal court must presume the state court's determinations of factual issues are correct, unless the petitioner presents clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions). This presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000).

## IV.  DISCUSSION

Bodnari asserts the following four claims for relief: (1) the State failed to disclose impeaching and exculpatory evidence regarding his co-defendant Garcia; (2) counsel provided ineffective assistance by failing to investigate and obtain *Brady* material; (3) counsel provided ineffective assistance by failing to object to Garcia's testimony; and (4) the Superior Court improperly summarily denied Bodnari's post-conviction motion without providing him with copies of the responses filed by the State and defense counsel, and without conducting an evidentiary hearing.

### A.  Claim one is procedurally barred from habeas review

As the Delaware Superior Court explained when it denied Bodnari's second motion for new trial, the police interviewed Garcia on three different occasions: (1) September 19, 1999, which was audiotaped, transcribed into written form, and summarized in the police report; (2) September 20, 1999, which was audiotaped and summarized in the police report; and (3) March 10, 2000, which was transcribed into written form. The Deputy Attorney General interviewed Garcia shortly before Bodnari's July 2000 trial. Detective Goode was present at that interview, but no written notes were taken, nor was the interview recorded. *Bodnari*, 2002 WL 32071648, at *6.

Bodnari contends that another interview between Detective Goode and Garcia occurred in April 2000, during which Garcia stated that "other people" were involved in the sale of drugs with him, and that the State never provided discovery from this interview. Thus, in claim one, Bodnari asserts that the State violated *Brady* by failing to provide discoverable and exculpatory information regarding the April 2000 interview, and he also contends that Garcia was improperly

7

allowed to present false and misleading trial testimony regarding the same statement.

After reviewing the record, the court concurs with the State's assertion that this claim is procedurally barred from federal habeas review. Bodnari presented this claim to the Superior Court in his second motion for new trial. The Superior Court denied the motion for new trial, and Bodnari did not appeal that decision. Bodnari also did not raise the instant claim on direct appeal; rather, he presented the argument to the Superior Court in his Rule 61 motion. In turn, the Superior Court denied the claim as procedurally barred under Rule 61(i)(3) because Bodnari failed to raise the issue on direct appeal. The Delaware Supreme Court affirmed the Superior Court's decision "on the basis of and for the reasons set forth in the [Superior Court's] decision." *Bodnari*, 2006 WL 155237, at *1.

By affirming the Superior Court's application of the procedural bar in Rule 61(i)(3), the Delaware Supreme Court articulated a "plain statement" under *Harris v. Reed*, 489 U.S. 255, 263-4 (1989) that its decision rested on state law grounds. This court has consistently held that Rule 61 is an independent and adequate state procedural rule precluding federal habeas review. *See McCleaf v. Carroll*, 416 F. Supp. 2d 283, 296 (D. Del. 2006); *Mayfield v. Carroll*, 2005 WL 2654283 (D. Del. Oct. 11, 2005). Thus, the court cannot review the merits of claim one absent a showing of cause for the default, and prejudice resulting therefrom, or upon a showing that a miscarriage of justice will occur if the claims are not reviewed.

Bodnari appears to allege that neither his trial counsel nor his appellate counsel could have raised claim one during his appeal because the State consistently asserted that it had provided all discovery material to Bodnari prior to trial. The court rejects this spurious attempt to establish cause. For instance, once Garcia testified during the trial, Bodnari was aware of the

8

facts forming the basis of claim one, demonstrating that he could have raised the claim on direct appeal. In addition, trial counsel raised the issue of this alleged *Brady* violation in Bodnari's second motion for new trial, thereby demonstrating counsel's (and Bodnari's) awareness of the premise for claim one in time to present it on direct appeal.

Although Bodnari's failure to establish cause eliminates the need to address the issue of prejudice, the court nevertheless concludes that Bodnari cannot demonstrate that he suffered any prejudice as a result of his default of claim one. Bodnari bases his allegation that an interview took place in April 2000 on Garcia's testimony that he talked to Goode again after his September 1999 and March 2000 interviews. However, both the prosecutor and defense counsel agreed that all discovery material was provided to the defense prior to trial, and after examining the record on post-conviction review, the Delaware Superior Court found that Garcia's reference to a "later" discussion with Goode actually meant the trial preparation meeting held between the prosecutor and Garcia at which no statements were recorded. *Bodnari,* 2005 WL 589932, at *2-3, 5. In other words, Goode simply did not interview Garcia in April 2000, and therefore, the State did not commit any discovery violation by failing to provide a transcript or tape of a non-existent interview.

On habeas review, the court must defer to the trial court's factual finding that no interview occurred in April 2000 because Bodnari has not presented the court with any clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1). Thus, the court concludes that Bodnari has failed to demonstrate cause and prejudice sufficient to excuse his procedural default

of claim one.[2]

In addition, the miscarriage of justice exception to the procedural default doctrine does not excuse Bodnari's default, because he has not provided new reliable evidence of his actual innocence. Accordingly, the court will dismiss claim one as procedurally barred.

### B. Claims two and three do not warrant relief under § 2554(d)

In claim two, Bodnari contends that trial counsel provided ineffective assistance by failing to review the transcript of, or listen to, Goode's tape-recorded interview of Garcia that took place on September 20, 1999. According to Bodnari, some of the statements Garcia made during the course of the September 20, 1999 interview were inconsistent with his subsequent trial testimony, and counsel was unable to impeach Garcia's credibility on this basis because he was unfamiliar with the details of the September 20, 1999 interview.

In claim three, Bodnari asserts that trial counsel failed to object to Garcia's testimony "in regard to known facts which would have led inevitably to the conclusion that Garcia was concealing the names and protecting the identity of drug dealers." (D.I. 2, at pp. 17-18.) Specifically, Bodnari contends that the names of the "other people" constituted exculpatory evidence, and therefore, counsel should have compelled the State to produce the names of those "other people."

---

[2]To the extent Bodnari asserts ineffective assistance of counsel as cause for the default, as opposed to counsel's lack of knowledge, the fact that there simply was no April 2000 interview demonstrates that counsel did not perform ineffectively by failing to raise the alleged *Brady* violation during trial or on direct appeal. Although trial counsel raised the *Brady* violation claim in the second motion for new trial, trial counsel admitted in his Rule 61 motion that he was confused about the dates of Garcia's interviews and that, after reviewing the record in preparation for his Rule 61 affidavit, he was of the opinion that no such interview occurred in April 2000. (D.I. 16.)

Bodnari presented these two ineffective assistance of counsel claims to the Delaware Superior Court in his Rule 61 motion. The Superior Court denied the claims as meritless, and the Delaware Supreme Court affirmed that decision. Consequently, Bodnari will only be entitled to habeas relief if the Delaware Supreme Court's decision is either contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688. In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-260 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

Here, the Superior Court identified *Strickland* as the proper standard and analyzed Bodnari's allegations regarding counsel's performance within its framework. Therefore, the Delaware Supreme Court's affirmance of the Superior Court's decision is not contrary to

11

*Strickland. Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause.").

The court's inquiry is not over, however, because it must also determine whether the Delaware Supreme Court reasonably applied *Strickland* in denying Bodnari's ineffective assistance allegations. After considering claim one, the Superior Court determined that "the fact that [counsel] did not listen to the tape [was] irrelevant because he reviewed Goode's police report, which accurately summarized Garcia's statements." *Bodnari,* 2005 WL 589932, at *4. The Superior Court also noted that Bodnari's appellate counsel obtained the tape, had it transcribed, and concluded that "it did not differ in any material way from the summarized version in Goode's police report." *Id.* at *3.

In turn, the Superior Court determined that counsel had done "an excellent job of impeaching Garcia's credibility." For instance, "he made Garcia admit before the jury that he had lied repeatedly to the DSP officers that had interviewed him. [Counsel] also made it clear to the jury that Garcia had entered into a very favorable plea agreement with the State and that he would do whatever was necessary to get out of prison as soon as possible so that he could go home and see his children. [Counsel] very ably proved that Garcia was a liar and had every reason to keep lying. This is exactly what Bodnari wanted done and it is exactly what [counsel] did. I can find no fault in [counsel's] representation of Bodnari merely because he accomplished this objective without attacking a few of Garcia's statements." *Bodnari*, 2005 WL 589932, at *5. Consequently, the Superior Court held that counsel's representation with respect to this issue did not fall below an objective standard of reasonableness. Based on this record, the court concludes

12

that the Delaware Supreme Court did not unreasonably apply *Strickland* in affirming the Superior Court's denial of claim two.

To the extent claim three alleges that counsel should have compelled the State to disclose the names of the other people involved in the drug distribution ring, there is nothing in the record to support Bodnari's underlying presumption that the State knew the real names of the other people allegedly involved in the drug distribution before Bodnari's trial started. First, the Deputy Attorney General who prosecuted the case stated in an affidavit that he did not have any knowledge of Detective Goode or anyone else for the State conducting an interview of Garcia before Bodnari's trial that focused at all on "other people" being involved with Garcia in a drug distribution conspiracy. Second, Garcia's statements referring to "other people" only contained partial names and nicknames like "Rasher, "Sam," and "Mooch." The sole complete name Garcia gave was Sam Stumhofer, identified as "Sam," who owned the vehicle that Bodnari and Garcia were riding in when they were stopped. As aptly stated by the Superior Court, "there is no surprise that there were "other people" involved. There were just no "other people" involved that Garcia ever identified in any useful way for the State." *Id.* at *3.

And finally, Bodnari's assertion that trial counsel could have elicited the names of the "other people" during his cross-examination of Garcia is entirely speculative, especially when viewed in context with Garcia's failure to provide the police with the full names of the "other people" during his other statements and plea negotiations. Therefore, Bodnari has failed to demonstrate that he was prejudiced by counsel's cross-examination of Garcia in this respect. *See Duncan v. Morton*, 256 F.3d 189, 201-02 (3d Cir. 2001). Accordingly, the court concludes the Delaware Supreme Court's denial of three does not warrant relief.

## C. Claim four: defective post-conviction procedure

In his final claim, Bodnari contends the Delaware Superior Court violated his due process rights by failing to provide him with copies of trial counsel's and the State's responses to his Rule 61 motion, and by failing to conduct an evidentiary hearing. However, this alleged error in Bodnari's state post-conviction proceeding does not constitute an issue cognizable on federal habeas review. *See Lambert v. Blackwell*, 387 F.3d 210, 247 (3d Cir. 2004)(claims based on errors in a state post-conviction proceeding cannot serve as the basis for federal habeas relief). Accordingly, the court will deny claim four.

## D. Request for an evidentiary hearing and representation by counsel

### 1. Evidentiary hearing

Bodnari asks the court to conduct an evidentiary to resolve any factual disputes related to the claims in the petition that may be raised by the State's answer or by Bodnari's reply to that answer. (D.I. 2, at p. 24.) Liberally construed, Bodnari's request for an evidentiary appears to be based on his continuing belief that Detective Goode interviewed Garcia sometime in April 2000, and that the State has never supplied Bodnari with any information with respect to that interview. Bodnari contends that he is entitled to an evidentiary hearing because he has established a "colorable claim for relief" and he was never granted an evidentiary hearing by the state courts despite his requests for such a hearing.

When a petitioner has failed to develop the factual basis for a claim in state court, and that failure is due to a "lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel," *Williams v. Taylor*, 529 U.S. 420, 432 (2000), a district court cannot hold an evidentiary hearing on the claim unless the petitioner shows that:

14

(A) the claim relies on ----

> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense.

28 U.S.C. 2254(e)(2). As explained by the Supreme Court, "[d]iligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." *Williams*, 529 U.S. at 437.

If, however, the "failure to develop" the factual basis of a claim is not due to a petitioner's lack of diligence, a district court has discretion to hold an evidentiary hearing. *Campbell v. Vaughn,* 209 F.3d 280, 286-87 (3d Cir. 2001). In exercising its discretion, the court should focus "on whether a new evidentiary hearing would be meaningful, in that a new hearing would have the potential to advance the petitioner's claim." *Id.* at 287.

Here, even if the court presumes that Bodnari diligently sought an evidentiary hearing on his claims in state court, the court concludes that an evidentiary hearing is not warranted. As explained *supra* in the text of the opinion, the state court record demonstrates that there were only three formal recorded or written statements of Garcia, and that none of them occurred in April 2000: (1) the September 19, 1999 audio taped statement, police report summarizing that statement, and a transcript of that recording; (2) the September 20, 1999 audio taped interview and a police report summarizing that statement; and (3) the March 10, 2000 taped interview and a transcript of that interview. The record does indicate that the Deputy Attorney General

15

prosecuting the case formally interviewed Garcia on another occasion shortly before the trial

started in July 2000, with Detective Goode present; this interview was not recorded and neither

the Deputy Attorney General nor Detective Goode took written notes. (D.I. 16, Response to

Motion for New Trial in *State v. Bodnari*, ID# 9909027880, at p. 6, n.1.) However, Bodnari's

request for an evidentiary hearing does not appear to be related to this last interview.

Accordingly, because the record clearly refutes Bodnari's allegation regarding the existence of an

un-disclosed April 2000 interview between Detective Goode and Garcia, his request for an

evidentiary hearing is denied.

## 2. Representation by counsel

Bodnari asks for representation by counsel in this proceeding. For the following reasons,

the court concludes that representation is not warranted.

To begin, a petitioner does not have a constitutional or statutory right to an attorney in a

federal habeas proceeding. *See Coleman v. Thompson*, 501 U.S. 722, 752 (1991); *Reese v.

Fulcomer*, 946 F.2d 247, 263 (3d Cir. 1991); *United States v. Roberson*, 194 F.3d 408, 415 n.5

(3d Cir. 1999). A district court may, however, seek legal representation by counsel for a

petitioner who demonstrates "special circumstances indicating the likelihood of substantial

prejudice to [the petitioner] resulting . . . from [the petitioner's] probable inability without such

assistance to present the facts and legal issues to the court in a complex but arguably meritorious

case." *Tabron v. Grace*, 6 F.3d 147, 154 (3d Cir. 1993)(citing *Smith-Bey v. Petsock*, 741 F.2d

22, 26 (3d Cir. 1984)); 18 U.S.C. § 3006A(a)(2)(B) (representation by counsel may be provided

for a financially eligible petitioner when a court determines that the "interests of justice so

require"). Factors to be considered by a court in deciding whether to request a lawyer to

represent an indigent petitioner include: (1) the merits of the petitioner's claim; (2) the

petitioner's ability to present his or her case considering his or her education, literacy,

experience, and the restraints placed upon him or her by incarceration; (3) the complexity of the

legal issues; (4) the degree to which factual investigation is required and the petitioner's ability to

pursue such investigation; (5) the petitioner's capacity to retain counsel on his or her own behalf;

and (6) the degree to which the case turns on credibility determinations or expert testimony.

*Montgomery v. Pinchak*, 294 F.3d 492, 498-99 (3d Cir. 2002); *Tabron*, 6 F.3d at 155-56.

In this case, Bodnari's one sentence request for counsel does not address the factors listed

above. Bodnari's filings in this proceeding also demonstrate that he has a sufficient

understanding of the issues which has enabled him to coherently present his case. *Parham v.

Johnson*, 126 F.3d 454, 460 (3d Cir. 1997)(citations omitted). Moreover, expert testimony is not

necessary and the ultimate resolution of the petition does not depend upon credibility

determinations. Accordingly, the Bodnari's request for representation is denied.

**IV. CERTIFICATE OF APPEALABILITY**

When a district court issues a final order denying a § 2254 petition, the court must also

decide whether to issue a certificate of appealability. *See* Third Circuit Local Appellate Rule

22.2. A certificate of appealability is appropriate when a petitioner makes a "substantial showing

of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the

district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. §

2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Further, when a federal court denies a habeas petition on procedural grounds without

reaching the underlying constitutional claims, the prisoner must demonstrate that jurists of reason

17

would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Slack*, 529 U.S. at 484.

The court concludes that Bodnari's petition does not warrant federal habeas relief. Reasonable jurists would not find this conclusion to be debatable. Consequently, the court declines to issue a certificate of appealability.

## V. CONCLUSION

For the reasons stated, Bodnari's petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied. An appropriate order shall issue.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

JULIAN BODNARI,                      )
                                     )
            Petitioner,              )
                                     )
     v.                              )          Civ. A. No. 06-257-GMS
                                     )
PERRY PHELPS, Warden, and            )
ATTORNEY GENERAL OF THE              )
STATE OF DELAWARE,                   )
                                     )
            Respondents.             )

## ORDER

For the reasons set forth in the Memorandum Opinion issued this date, IT IS HEREBY

ORDERED that:

1. Julian Bodnari's petition for the writ of habeas corpus filed pursuant to 28

U.S.C § 2254 is DISMISSED, and the relief requested therein is DENIED. (D.I. 1.)

2. The court declines to issue a certificate of appealability due to Bodnari's failure to

satisfy the standards set forth in 28 U.S.C. § 2253(c)(2).

Dated: _____July 6_____, 2009

_____
CHIEF, UNITED STATES DISTRICT JUDGE